STATE

v.

**Gregory Nolan PARKER.**

No. 88–331–C.A.

Supreme Court of Rhode Island.

Dec. 1, 1989.

James E. O'Neil, Atty. Gen., Nicholas Trott Long, Asst. Atty. Gen., Jane McSoley, Sp. Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine A. Gibran, Asst. Public Defender, for defendant.

OPINION

KELLEHER, Justice.

On December 4, 1986, the defendant, Gregory Nolan Parker (Parker), was indicted on three counts by a Newport County grand jury. The indictment charged him with (1) first-degree sexual assault in violation of G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1984, ch. 355, § 1, (2) second-degree sexual assault in violation of § 11–37–4, as amended by P.L.1984, ch. 59, § 1, and (3) conspiracy to commit sexual assault in violation of G.L. 1956 (1981 Reenactment) § 11–1–6. On February 3, 1988, a Superior Court jury found Parker guilty on all counts. Two other defendants named in the indictment, Paul Langlois (Langlois) and David Costa (Costa), testified on behalf of the state in exchange for reduced sentences. The defendant now appeals from the judgment of conviction, claiming that the trial justice committed error in two areas.

The first claim of error is that the trial justice impermissibly limited the cross-examination of the complaining witness, thereby violating Parker's constitutional right to confront and cross-examine his accusers, as guaranteed by the United States and Rhode Island Constitutions. The second claim of error concerns the trial justice's decision not to sanction the state or otherwise remedy the state's failure to produce Costa's complete criminal record. Because we conclude that defendant has failed to show that prejudicial error occurred at his trial, we affirm the judgment of conviction. We shall address the constitutional claim first.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."[1] Within the

---

1. In pertinent part the Rhode Island constitutional provision, article I, section 10, of the

rights of this confrontation clause is the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *State v. Manocchio*, 496 A.2d 931, 933 (R.I.1985), *vacated*, 475 U.S. 1114, 106 S.Ct. 1627, 90 L.Ed.2d 175 (1986), *reheard with same results*, 523 A.2d 872 (R.I.1987). A defendant must also be allowed "not just some cross-examination, but *sufficient* cross-examination as a matter of right." *State v. Parillo*, 480 A.2d 1349, 1359 (R.I.1984). Furthermore, this court has stated that the cross-examiner must be given reasonable latitude, including inquiry into bias, motive, or prejudice. *State v. Anthony*, 422 A.2d 921, 924 (R.I.1980). However, we have also stated the court has a duty to protect a witness from questions that go beyond the proper bounds of cross-examination. *Id.* Such questions are those that "harass, annoy, or humiliate the witness, or questions that are irrelevant or offer no probative value." *Id.*

Thus, the scope of cross-examination is a matter within the sound discretion of the trial justice once there has been permitted " 'sufficient cross-examination to satisfy the Sixth Amendment.' " *State v. DeBarros*, 441 A.2d 549, 552 (R.I.1982); *State v. O'Brien*, 122 R.I. 749, 753, 412 A.2d 231, 233 (1980).

■ In the case at bar Parker complains that the trial justice improperly limited cross-examination in not allowing questioning along three lines. First, defendant states, the trial justice did not permit defense counsel to question the victim about her mental illness and its symptoms, specifically her experiencing auditory and visual hallucinations after the event in question. Further, defense counsel argues, he did not allow an extensive exploration of the nature of the victim's hallucinations which occurred immediately prior to the incident. Lastly, Parker complains, counsel was not allowed to inquire about the victim's substance abuse at or around the time of her giving testimony.

The extent to which a trial justice must allow cross-examination has been explored

by this court on many occasions. In *Manocchio*, in a trial that took place fifteen years after the incident, the central witness was being treated for "premature Alzheimer's Disease." The trial justice restricted cross-examination to the degree that the jury knew only that he had "a problem with his memory." *Manocchio*, 523 A.2d at 874. The witness also had been a participant in the federal witness protection program so that the defendant had no other means of acquiring impeachment evidence. We held that because the state had only one witness able to testify about the details of the crime, an understanding of the magnitude of that witness's illness was crucial to the jury's assessment of his credibility and was therefore critical to the outcome of the case. Under the harmless-error test enunciated by the United States Supreme Court in *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986), which instructs that the "correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt," we vacated the conviction and remanded the case for a new trial. *See also State v. Carrera*, 528 A.2d 331 (R.I. 1987), where the erroneous exclusion of a witness's prior history was found to be harmless in a situation in which other evidence alerted the jury to past problems, and *State v. Freeman*, 473 A.2d 1149 (R.I. 1984), where a total preclusion of inquiry into motive, bias, or prejudice of a key witness was found to be not harmless.

Here, however, the record clearly indicates that defendant was allowed to cross-examine the victim concerning her mental illness, hallucinations, and drug abuse. On the topic of her mental illness, the following exchange occurred during cross-examination:

"Q. Now, Mary, are you on medication today?

"A. Yes, I am.

"Q. What kind of medication are you on?

Rhode Island Constitution, is identical.

"A. I take Navane and Benzotrophine.

"Q. Were you on medication on the 17th of June?

"A. Yes.

"Q. What were you on then, Mary?

"A. The same medication.

"Q. Why do you take that medication?

"A. To prevent thought disorder.

\* \* \* \* \* \*

"Q. And have you been hospitalized for these problems?

"A. Yes.

"Q. About how many times were you in the hospital before June 17th, 1986?

"A. I was first hospitalized when I was 23, I was probably hospitalized eight times.

"Q. Now, since June 17th, 1986 when was the next time you went to the hospital?

"A. It was around three weeks later.

"Q. Why did you go?

"A. I was hearing voices."

As far as hallucinations prior to the incident were concerned, the trial justice allowed the following exchange to take place:

"Q. Do you recall telling Doctor Carr when you were admitted to the hospital in May of 1986 that you were hearing the voice of Jesus Christ?

"A. I remember having a religious experience.

"Q. What does that mean?

"A. What does that mean?

"Q. Can you explain what you mean by that?

"A. I thought that I was having communication with God."

Shortly thereafter, following objection by the state to further questioning, the trial justice inquired about the relevance of the specific details of the "religious experience." Defense counsel argued that the details were relevant to the issue of her mental status within the same month as the assault. The trial justice, unpersuaded, sustained the objection.

The trial justice also allowed extensive inquiry into the victim's past record of failing to take her medication:

"Q. And you have been on medicine or similar type medicine since you have been 23?

"A. Yes.

"Q. Isn't it a fact that at times you haven't taken your medicine because you didn't want to?

"A. Yes.

"Q. That caused you problems, didn't it?

"A. It wasn't wise.

"Q. And it wasn't wise because it would cause you not to be able to think clearly, isn't that right?

"A. Yeah, that's right."

"Q. And in fact during May and June of 1986 you were receiving dosages of Prolixin, weren't you?

"A. Yes.

"Q. And you received that in the form of an injection, is that right?

"A. Yes.

"Q. And didn't the nurse explain to you the reason why you were going to receive it in the form of an injection because you hadn't been taking your medicine orally and they wanted to make sure you received it?

"A. That would be right."

Lastly, the trial justice allowed significant inquiry into the victim's substance abuse:

"Q. Now, when you were treating with Judy Ferreira at the mental health center in the Spring of 1986 part of your problem that they were treating was that you had abused alcohol and drugs, isn't that correct?

"A. Yes, that's true.

"Q. And how long had that been going on?

"A. I don't know.

\* \* \* \* \* \*

"Q. Back in June of 1986 were you abusing alcohol and drugs during that month?

"A. No. I wasn't drinking at all.

"Q. When had you stopped drinking prior to June?

"A. I don't recall. I just know I wasn't drinking then."

During this exchange, defense counsel asked the witness if her abuse of alcohol and drugs was "ongoing." Upon objection by the state, the trial justice inquired about the relevance. Defense counsel cited credibility, and the trial justice was again unpersuaded. A side-bar conference took place, and the trial justice indicated that the witness "has some rights, present rights to privacy."

As the United States Supreme Court has noted,

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *State v. Vento*, 533 A.2d 1161, 1164 (R.I.1987) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295, 88 L. Ed. 2d 15, 19 (1985) (per curiam)).

Even though defense counsel's cross-examination of the victim may not have been as effective as he would have desired, the record shows that in each of the areas complained of, an opportunity for effective cross-examination was allowed. The defendant has not shown prejudicial error. The jury was by no means kept in the dark concerning the severity of the victim's illness and the occurrence of hallucinations. Nor did it remain uninformed concerning her past drug and alcohol abuse. We therefore hold that any error that may have been committed was harmless beyond a reasonable doubt because of the significant cross-examination of the victim that was allowed, and the corroborating testimony of the other two witnesses, Langlois and Costa. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

■ We now turn to defendant's second claim of error. Defense counsel argues that the state's failure to provide the complete criminal record of one of its own witnesses, David Costa, greatly prejudiced defendant's case. Specifically, they contend that the trial justice erred in failing to impose a sanction or otherwise remedy the prejudice.

The scope of the state's duty to produce evidence is governed by Rule 16 of the Superior Court Rules of Criminal Procedure. Rule 16, in pertinent part, provides as follows:

"(a) *Discovery by Defendant.* Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:

\* \* \* \* \* \*

"(8) all reports or records of prior convictions of the defendant, or of persons whom the attorney for the State expects to call as witnesses at the trial \* \* \*.

"(i) *Failure to Comply.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule \* \* \* it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate."

We have stated that "the imposition of any Rule 16 sanction is a matter within the sound discretion of the trial justice." *State v. Concannon*, 457 A.2d 1350, 1353 (R.I. 1983); *State v. Coelho*, 454 A.2d 241, 245 (R.I.1982). In exercising this discretion, a trial justice must consider what is "right and equitable under all of the circumstances and the law." *Coelho*, 454 A.2d at 245 (quoting *State v. Allan*, 433 A.2d 222, 225 (R.I.1981)). Furthermore, the trial justice, in considering a request for a continuance based upon the failure of a party to make a timely disclosure, should consider "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *Id.* In this case, the state claimed that it failed to disclose Costa's

total criminal record because the state did not know about it, and it did not show up during a computer search. In fact the record indicates that the prosecutor provided defense counsel with an updated Bureau of Criminal Information (BCI) report that the state had just received the very day of Costa's testimony. Therefore, it would appear that this alleged discovery violation by the state was inadvertent. And, as we stated in *State v. Brown*, 528 A.2d 1098, 1102 (R.I.1987), "[I]f the violation is inadvertent in nature we look to determine whether the opposing party has been prejudiced by nondisclosure."

The record before us indicates that if there was any prejudice, the extent was minimal. The jurors heard, through Costa's own testimony, of his lengthy criminal record. Yet it chose to give his testimony weight. Furthermore, Costa's testimony was corroborated, with little discrepancy about the essential acts complained of, by the testimony of Langlois and of the victim.

As we have indicated in *State v. Coelho*,

"Without question, the trial justice is in the best position to determine whether any harm has resulted from noncompliance with discovery motions and whether the harm can be mitigated; therefore, his ruling should not be overturned absent a clear abuse of discretion." 454 A.2d at 244–45.

On the record before us, we cannot find that the trial justice abused his discretion in this matter.

For the foregoing reasons the defendant's appeal is denied and dismissed, and the judgment of conviction affirmed.