## STATE

v.

### Charles OLSEN.

Nos. 90–485–C.A., 90–550–C.A.

Supreme Court of Rhode Island.

May 19, 1992.

James E. O'Neil, Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

SHEA, Justice.

This case comes before the Supreme Court on the defendant's appeal from a judgment of conviction in Superior Court on one count of entering a dwelling with intent to commit larceny and one count of conspiracy. The defendant was also found to be a probation violator for two previously imposed suspended sentences. For the reasons that follow, we reverse the judgment of conviction on the larceny and conspiracy counts, and grant the defendant a new trial.

Around 6:40 p.m. on October 26, 1989, Terrence Moy (Moy) left his house in the Warwick Neck section of the city of Warwick and proceeded to a boathouse located on his property, about 150 feet from his house. Moy intended to exercise at the boathouse. A few moments later, Moy's stepdaughter Aubry Snowden, aged seven and his wife's niece Victoria Snowden, aged eighteen, also left the house. Victoria was driving Aubry to a Brownie meeting. About one hour later, Moy finished his workout and began walking back to his house. As he approached the house, he noticed that someone was in his bedroom on the second floor. Moy could not discern exactly who was in the bedroom but he assumed the person was his stepdaughter Aubry. Moments later a car pulled into Moy's driveway and Aubry and Victoria got out. Immediately Moy ran to his house to see who was inside. He found the kitchen door open, which was not normal. He also noticed that the front door was wide open. Next Moy went up to the second-floor bedroom and discovered that a pillowcase had been taken from a pillow and that

his wife's jewelry box was on the floor. After determining that the intruder was no longer present in the house, Moy had Victoria call the police. After the police arrived, Moy determined that his jewelry box, some cash, and his wife's diamond ring were also missing.

At the time of the housebreak, Victoria Snowden was friendly with a girl named Jennifer Fielder (Fielder). A few months before the house break, Fielder and her then-boyfriend Charles Olsen (Olsen), defendant, had visited Victoria at the Moy home. Fielder and defendant only entered the front room and the kitchen of the Moy home.

Fielder did not see defendant often in July or August of 1989. In September she started college at Rhode Island College. That autumn she began to see defendant again and to talk with him on the telephone. During an October 1989 telephone conversation, Fielder testified, Olsen offered to give her $1,000 if she would tell him the best time to break into the Moy home. Fielder thought about the proposal and then accepted.

On the night of the break-in, Fielder testified that she called the Moy residence and no one answered the telephone. Since she believed the house was empty, she called Olsen. Upon hearing that the Moy house was empty, Fielder alleges that Olsen hung up the phone quickly. After eight that evening Fielder called the Moy residence again and a tearful Victoria answered. Victoria told Fielder that her house had been broken into. After this conversation Fielder called Olsen. Fielder testified that Olsen told her that he had taken a lot of jewelry from the Moy home but that the break-in had been sloppy because he had not had much time in the house.

At trial defendant presented an alibi defense. A neighbor of defendant, Christopher Shipman (Shipman), testified that on the night of the break-in, defendant came to his house at around 6:30 p.m. and requested help because defendant's girlfriend's car was stuck. Shipman testified that he remembered the time because Olsen had interrupted Shipman's son's birth-

day party. Shipman testified that a short time later he drove his tow truck to Olsen's house and picked up Olsen and his current girlfriend, a young woman named Lori. The threesome then proceeded to the Newport Creamery in Warwick where the girlfriend's car was stuck and then towed it back to Olsen's· house. Shipman testified that he returned home at 8 p.m.

Relying on this evidence, the jury determined that Charles Olsen was guilty of one count of entering a dwelling with intent to commit larceny and one count of conspiracy. The trial justice also determined that he was a probation violator. On appeal defendant raises three issues.

## I

■ The first issue that defendant raises on appeal is whether the trial justice properly granted the state's motion in limine to preclude the defense from cross-examining Fielder about any criminal activities she may have engaged in with her current boyfriend, Scott Putnam (Putnam). The defendant asserts that he could produce evidence that, one month prior to the Moy housebreak, Fielder drove Putnam to the house of Craig Price, a friend· of Putnam's, so Putnam could break into the house. Putnam was ultimately arrested and charged with this house-break. The defendant hoped to use this evidence to show that Fielder and Putnam were in the habit of breaking into the homes of their friends and that Fielder accused Olsen in order to protect Putnam, her romantic interest at the time of the break-in.

The trial justice granted the state's motion in limine for the following reasons. The trial justice ruled that cross-examination of Fielder concerning whether she and Putnam went to Craig Price's house so Putnam could break in was irrelevant. Specifically the trial justice determined that cross-examination of Fielder concerning the issue just discussed would not provide a sufficient basis for establishing motive that would be necessary to make the evidence admissible under Rule 404(b) of the Rhode Island Rules of Evidence. The trial justice did state, however, that "if there was a

relationship between Jennifer and Scott Putnam and the police initial inquiries were phrased in such a manner as to lead her to the conclusion that they were investigating Scott Putnam and not Mr. Olsen, then I think that boyfriend-girlfriend relationship can be developed in that she might possibly try to hide Scott Putnam's involvement in the crime * * *."

The defendant argues that his Sixth Amendment right to confront and cross-examine his accuser is violated by the trial justice's granting of the state's motion in limine. Essentially defendant asserts that by not being allowed to question Fielder concerning her activities with Putnam, defendant is prevented from presenting a defense.

The state argues that evidence of Fielder's activities with Putnam concerning the Craig Price housebreak were irrelevant. The state also asserts that the trial justice's ruling on the motion in limine did not prevent defendant from cross-examining witnesses or from presenting a defense.

The Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution ensure that a criminal defendant has the right to confront those who testify against him or her at trial. Included in the right to confront witnesses is the fundamental right of the criminal defendant to cross-examine his or her accusers. This right is also guaranteed by both our Federal and our State Constitutions. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *State v. Texter,* 594 A.2d 376, 377 (R.I.1991); *State v. Veluzat,* 578 A.2d 93, 94 (R.I.1990); *State v. Parker,* 566 A.2d 1294, 1294–95 (R.I.1989); *State v. Powers,* 566 A.2d 1298, 1303 (R.I.1989); *State v. Canning,* 541 A.2d 457, 461 (R.I. 1988); *State v. Manocchio,* 523 A.2d 872, 874 (R.I.1987); *State v. Burke,* 522 A.2d 725, 733 (R.I.1987); *State v. Anthony,* 422 A.2d 921, 923–24 (R.I.1980).

This court has always been "especially solicitous of cross-examination for bias or motive on the part of a defendant's primary accuser." *State v. Beaumier,* 480 A.2d 1367, 1372 (R.I.1984). For example,

in *Beaumier* we determined that the defendant should have been allowed to present evidence that the state's most important witness, a police officer, was under investigation for misconduct at the time he testified against the defendant. *Id.* The court stated that "[t]he right of confrontation * * * [requires] that a jury be allowed to evaluate any motive that a witness may have for testifying." *Id.* Moreover, in *State v. Texter,* 594 A.2d 376 (R.I.1991), we concluded that the defendant should have been able to ask the victim about an incident wherein the defendant had accused the victim's husband of stealing. We noted that this evidence was relevant because "inquiry into this area would have a tendency to make the existence of any bias or motive harbored by the victim and her husband more or less probable than it would be without such evidence." *Id.* at 378. The defendants were granted a new trial in both of these cases.

The cross-examination of Fielder that was permitted by the trial justice in the present case was not sufficient to afford defendant his Sixth Amendment right to confront and cross-examine his accuser. The case law of this court firmly establishes that cross-examination that relates to motive is relevant and therefore admissible. The defendant should have been allowed to ask Fielder questions about her relationship with Putnam and about whether she drove Putnam to Craig Price's house so they could break in. Although the trial justice's concern that this evidence would violate Rule 404(b) has some merit,[1] we believe that a limiting instruction by the trial justice would be sufficient to prevent the jurors from using this evidence to show action in conformity with character. The evidence is relevant and should have been admitted at trial because it is evidence that tends to make the existence of a motive for testifying on Fielder's behalf more or less probable than it would be without the evidence. Because we have determined that defendant's right to cross-examine his ac-

cusers has been violated, defendant is entitled to a new trial.

## II

The next issue that defendant raises is whether the state violated Rule 16 of the Superior Court Rules of Criminal Procedure by not providing defendant with specific statements that were made by him to Fielder during telephone conversations in the summer of 1989.

During a conference in chambers just before the start of the second day of trial, the state announced that it intended to elicit from Fielder inculpatory statements made by defendant. The defense counsel objected to the use of these statements, arguing that the statements had not been revealed as required by Rule 16 and that the failure to provide these statements violated due process.

Rule 16(a)(7) provides in pertinent part: "Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect * * * any of the following items within the possession, custody, or control of the State, the existence of which is known * * * to the attorney for the State:

\* \* \* \* \* \*

(7) as to those persons whom the State expects to call as witnesses at the trial. * * * all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial."

This rule has often been described as "one of the most liberal criminal-discovery mechanisms in the United States." *State v. Powers,* 526 A.2d 489, 491 (R.I.1987). The rule requires pretrial disclosure and is intended to "be broad in scope so that neither the defense nor the prosecution is surprised at trial." *Id.* Proper disclosure of information permits both the state and

---

1. Rule 404(b) of the Rhode Island Rules of Evidence provides: *"Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."

the defendant to have sufficient time to prepare the case adequately.

In the present case the state's response to defendant's Rule 16 requests included statements that Fielder spoke with defendant on the telephone during the summer of 1989 and in the fall of 1989. Thus defendant was clearly on notice that such conversations had occurred. The state should have, as required by Rule 16(a)(7), also provided defendant with a summary of what it expected the testimony to be. We agreed with the trial justice when he stated, "I would tend to think that a more elaborate account of what Jennifer will testify to would be appropriate." Nevertheless, the trial justice cured any harm that could be attributed to defendant by offering him a continuance. The defendant, after having had time to contemplate the issues, decided a continuance was not necessary. This case is completely different from *State v. Darcy*, 442 A.2d 900 (R.I. 1982), where we granted the defendant a new trial after the state responded to the defendant's Rule 16 request for discovery by stating that it did not have any oral statements or confessions and then elicited such statements from a witness at trial. In *Darcy* the prejudice to the defendant was overwhelming, but in this case prejudice to defendant does not exist. By not accepting a continuance, defendant undercuts his argument that he was prejudiced by the state's nondisclosure. Nevertheless, acceptance or rejection of a continuance is not the standard to determine if Rule 16 is violated. Prejudice to defendant is the primary factor. In this case we find that defendant has not been prejudiced because he was aware that Fielder told the prosecution about telephone conversations she had had with defendant and because the trial justice ensured that defendant had ample time to review the proposed testimony at trial. Thus Rule 16 was not violated.

### III

■ Finally defendant also argues that the trial justice should have granted his motion for a new trial and that the trial justice incorrectly determined that he was a violator of the terms of his probation. As support for this argument, defendant asserts that Fielder's testimony was incredible and that he had presented a solid alibi defense.

In ruling on a motion for a new trial, the trial justice must consider all the material evidence in light of the charge to the jury, using independent judgment; must pass upon the weight and credibility of the evidence; and must accept or reject conflicting testimony. *State v. Dame*, 560 A.2d 330, 333 (R.I.1989). It has long been established that the ruling of the trial justice on a motion for a new trial will not be disturbed by this court unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Grundy*, 582 A.2d 1166, 1172 (R.I. 1990); *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989); *State v. LaPointe*, 525 A.2d 913, 914 (R.I.1987).

A review of the trial record indicates that the trial justice meticulously considered all the evidence presented, evaluated the credibility of the witnesses, and concluded that Fielder "was telling the truth as she remembered it and she remembered the salient information that dealt with the commission of the crime." Since the trial justice carefully considered all the evidence and our review of the record indicates that his conclusion was not clearly wrong, we determine that defendant's motion for a new trial was properly denied.

■ It is well established that a probation-violation hearing is not part of the criminal-prosecution process and thus is not entitled to the full panoply of due-process rights. *In re Lamarine*, 527 A.2d 1133, 1135 (R.I.1987). Consequently the prosecution is not required to prove an accused's violation of probation beyond a reasonable doubt; rather the prosecution need only establish the violation by reasonably satisfactory evidence. *State v. Bourdeau*, 448 A.2d 1247, 1249 (R.I.1982). Furthermore, this court's review is "limited to a consideration of whether the trial justice acted arbitrarily or capriciously in finding a violation." *Id.*

At trial the jurors found the defendant guilty of the crimes charged while using the stringent beyond-a-reasonable-doubt standard in their deliberations. Thus the prosecution has easily met the less stringent reasonably-satisfactory-evidence standard required for a probation-violation hearing. The fact that the trial justice improperly limited cross-examination of a state witness does not affect the finding of probation violation since the defendant does not have full due-process rights at such a hearing. Thus the trial justice's determination that the defendant is a probation violator is affirmed.

In view of our holding on the restrictive cross-examination of Fielder, the defendant's appeal is sustained, the judgment of conviction on the larceny and conspiracy charges is vacated, and the papers of this case are remanded to the Superior Court for a new trial.