**STATE**

v.

**Adrian HAZARD.**

No. 97–380–C.A.

Supreme Court of Rhode Island.

Feb. 4, 2000.

Sheldon Whitehouse, Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case comes before us on the appeal of the defendant, Adrian Hazard (defendant), from judgments of conviction following a jury trial in Providence County Superior Court pursuant to a criminal information charging three felony counts: assault with intent to murder in violation of G.L.1956 § 11–5–1; discharging a firearm from a motor vehicle in a manner that created a substantial risk of death or serious personal injury (drive-by shooting) in violation of G.L.1956 § 11–47–51.1; and carrying a pistol without a license, in violation of § 11–47–8. The defendant was sentenced to two consecutive fifteen-year terms for the assault and drive-by shooting offenses and ten years to serve consecutively for carrying a pistol without a license. The defendant contends that the trial justice erred in numerous respects and that his convictions, specifically his conviction on the charge of discharging a firearm from a motor vehicle (drive-by shooting), should be reversed. For the reasons stated below we affirm the judgments of conviction.

## FACTS

On the afternoon of March 7, 1995, Terry Lee Jones (Jones) was shot while standing alongside a car occupied by Alpha Williams (Williams). Jones was speaking to Williams as a car traveled down Providence Street and slowed as it passed. A man inside the moving car fired three shots in the direction of the stopped car, striking Jones in the leg. Jones then ran across the street, dialed 911, and fled the scene. However, he was soon apprehended by Detective Stephen Springer (Springer) of the Providence Police Department, who, having been alerted to the shooting by a police radio broadcast, encountered Jones, but was unsure whether he was the suspect or the victim. Upon learning that Jones was wounded, Springer arranged for a rescue unit to transport him to Rhode Island Hospital.

When Springer initially spoke to Jones at the scene, Jones admitted that he had recognized the man who shot him but refused to identify him. Shortly thereafter, Jones changed his mind and provided a written statement identifying Charles Fontes (Fontes) as his assailant. Jones stated that he had known Fontes since the first grade and that Fontes had been sitting in the back seat of the moving car. The next day, Springer found out that the car involved in the shooting was owned by Jonathan Greenwood (Greenwood). Greenwood subsequently gave a statement to the police naming defendant, not Fontes, as the shooter. The Providence police then arrested defendant.

At trial, both Greenwood and Fontes gave testimony implicating defendant in the shooting. Fontes testified that on the day of the shooting he and Greenwood had been driving around in Greenwood's car smoking marijuana. He stated that they went to defendant's house, where he saw defendant brandish a handgun. Fontes testified that defendant had previously had an argument with Williams, the man with whom Jones was speaking to on Providence Street, and that defendant declared that "he was going to woop [Williams's] ass." Fontes stated that although the car belonged to Greenwood, he was the driver and that defendant and Greenwood were

sitting in the back of the car. When they approached the area where Williams and Jones were talking, defendant asked him to stop the car, according to Fontes. Fontes testified that three shots were fired from the back seat before he sped off. Greenwood also testified that he was seated in the back and, consistent with Fontes's testimony, Greenwood named defendant as the shooter. The victim, Jones, did not testify at trial despite defense counsel's attempts to secure his attendance. The record discloses that Jones evaded service of a witness subpoena and that the trial justice ultimately declared him to be unavailable.

In support of his appeal, defendant raises four issues that will be considered in the order in which they appear in his brief. Additional facts will be supplied as they are necessary.

## DISCUSSION

### I

### Jury Instruction

The defendant argues first on appeal that the trial justice committed reversible error when he instructed the jury that "as a matter of law, the weapon referred to is a firearm under the laws of Rhode Island." The defendant contends that this instruction established as proved an essential element of the charged offense, thereby violating defendant's state and federal constitutional right to a jury determination on each and every element of the offense at trial.

Count two of the information, discharging a firearm from a motor vehicle in a manner that created a substantial risk of death or serious personal injury, in violation of § 11–47–51.1 (drive-by shooting), requires the essential element that the instrument used by the defendant was in fact a firearm. It is this element with which we are concerned.

The trial justice instructed the jury as follows:

"The second count charges this defendant with unlawfully discharging a firearm from a motor vehicle in a manner which creates a substantial risk of death or serious personal injury to Mr. Jones. Thus, in order for you to find the defendant guilty of that particular count, the State is required to prove to you beyond a reasonable doubt that it was this defendant, Adrian Hazard, who did discharge a firearm, *and I'm instructing you as a matter of law, the weapon referred to is a firearm under the laws of Rhode Island.* So if you find that it was this defendant who did discharge a firearm from inside a motor vehicle in a manner which caused a substantial risk of serious bodily injury to Mr. Jones, then your verdict should be one of guilty. Again, if the state has failed to prove to you beyond a reasonable doubt that it was this defendant Adrian Hazard who did the shooting, or the State has failed to prove beyond a reasonable doubt that it was from a motor vehicle, or if the State has failed to prove beyond a reasonable doubt that the shooting was done in a manner which created a substantial risk of serious personal injury to Mr. Jones, then your verdict should be one of not guilty." (Emphasis added.)

██ The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article 1, section 2, of the Rhode Island Constitution deny the state the power to deprive the accused of liberty unless the state proves every element necessary to constitute the crime charged beyond a reasonable doubt. *Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218, 221 (1989); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). A jury instruction relieving the state of this burden violates a defendant's due process rights. Therefore, we are satisfied that the trial justice erred in taking away this fact-finding task that is assigned solely to jurors in a criminal trial. On

appeal, the state acknowledges this error on the part of the trial justice but argues that the instruction constitutes harmless error inasmuch as the jury, by its verdict of guilty on the remaining counts, made the factual determination that the weapon defendant used was a firearm. As with any harmless-error analysis, our task is to first decide whether this error is appropriate for a harmless-error analysis and, if so, whether the error, in light of that analysis, can be deemed harmless.

In determining whether the trial justice's instruction is subject to harmless-error analysis, it is important to recognize that the United States Supreme Court has held that "most constitutional errors can be harmless." *Neder v. United States,* 527 U.S. 1, ——, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 46 (1999) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 306, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302, 329 (1991)). In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court rejected the notion that constitutional errors necessarily require reversal of criminal convictions provided that an appellate court can be satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict. *Id.* at 21–22, 87 S.Ct. at 827, 17 L.Ed.2d at 709. Since *Chapman,* the Supreme Court has consistently held that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986).

■ However, there remain certain constitutional errors which, when committed during a criminal trial, require reversal without regard to the evidence or facts of a particular case. *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460, 470 (1986). These constitutional errors, although limited in number, are never subject to a harmless-error analysis. Examples of such errors are a defective reasonable doubt instruction (*Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)); denial of a public trial (*Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)); the complete denial of the right to counsel (*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); introduction of a coerced confession (*Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958)); and adjudication by a biased judge (*Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)).

In *Neder,* the United States Supreme Court reaffirmed its holding that the error in each of these cases will subject a trial to automatic reversal because errors of this dimension amount to a defect in the "framework within which the trial proceeds, rather than simply an error in the trial process itself." *Neder,* 527 U.S. at ——, 119 S.Ct. at 1833, 144 L.Ed.2d at 46. Such errors "infect the entire trial process," *id.* (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353, 367 (1993)), and "render a trial fundamentally unfair," *Rose,* 478 U.S. at 577, 106 S.Ct. at 3106, 92 L.Ed.2d at 470, because they deprive a defendant of his or her "'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence * * * and no criminal punishment may be regarded as fundamentally fair.'" *Neder,* 527 U.S. at ——, 119 S.Ct. at 1833, 144 L.Ed.2d at 46–47 (quoting *Rose,* 478 U.S. at 577–78, 106 S.Ct. at 3106, 92 L.Ed.2d at 470).

The Court in *Neder* applied a harmless-error analysis to cases in which a jury did not render a "complete verdict" in contrast to errors affecting the framework of a trial. These are cases in which a jury could not render a finding on an actual element of the offense because they were not properly instructed by the trial justice. *Neder,* 527 U.S. at ——, 119 S.Ct. at 1835, 144 L.Ed.2d at 48–49. The *Neder* Court tailored a restrictive approach to cases in which a jury did not render a "complete

verdict" on every element of the crime and concluded that these cases could be subject to harmless-error analysis. *Id.* at ——, 119 S.Ct. at 1835–36, 144 L.Ed.2d at 49.

■ Under this approach, "an instructional omission, misdescription, or conclusive presumption can be subject to harmless-error analysis only in three 'rare situations': (1) where the defendant is acquitted of the offense on which the jury was improperly instructed * * *; (2) where the defendant admitted the element on which the jury was improperly instructed; and (3) where other facts necessarily found by the jury are the 'functional equivalent' of the omitted, misdescribed, or presumed element." *Id.* at ——, 119 S.Ct. at 1835–36, 144 L.Ed.2d at 49. It is the state's contention that the present case falls within the last exception. We agree.

■ This third exception is referred to as the "functional equivalence" test and provides that, when the jury finds facts that "are 'so closely related' to the omitted element 'that no rational jury could find those facts without also finding' the omitted element," this exercise amounts to the functional equivalent of the omitted element. *Neder,* 527 U.S. at ——, 119 S.Ct. at 1836, 144 L.Ed.2d at 50 (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 281, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182, 190 (1993)). "When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed." *Carella,* 491 U.S. at 271, 109 S.Ct. at 2423–24, 105 L.Ed.2d at 225–26 (Scalia, J., concurring).

We conclude that the present case is one of those "rare situations." Here, the trial justice foreclosed any independent jury consideration of whether the facts proven established the firearm element of the drive-by shooting offense. In so doing, the jury could not render a "complete verdict" on every element of the count charged. However, we recognize that the jury made a plethora of findings that are the "functional equivalent" of the firearm element.

■ First, the jury found defendant guilty on count one, assault with intent to murder, in violation of § 11–5–1. The testimony at trial demonstrated that the only contact between defendant and Jones was a volley of shots. It is clear from the trial record that no other weapon was suggested by the evidence presented at trial, nor was any other form of assault alleged to have occurred. It was therefore necessary for the jurors to find that defendant fired the gun at Jones for them to convict him of the crime of assault with intent to murder.[1] In light of the jury's finding that defendant fired a volley of shots at Jones, and at least one shot found its target, it is clear that the jury necessarily must have concluded that a firearm was used in the shooting. We conclude that the finding of

---

1. The trial justice's jury instruction on count one is as follows:

"So, in the circumstances of this case, as relates to the first count, in order for you to return a verdict of guilty, the State is required to prove beyond a reasonable doubt that number one, there was an assault made upon the body of Mr. Jones. *Secondly, that it was this defendant, Adrian Hazard, who, in the circumstances of this case, shot Mr. Jones, and the State must prove beyond a reasonable doubt, as I've defined malice and murder for you, the State must prove beyond a reasonable doubt that at the time of the shooting, if you find it was Mr. Hazard who did the shooting, that it was done with the intent to murder Mr. Jones.* Simply put, if you find the State has proven each of those elements beyond a reasonable doubt, you should find the defendant guilty of that particular count. If you find from all of the evidence presented the State has failed to satisfy you beyond a reasonable doubt that there was an assault, that it was this defendant who did the shooting, or you find the State has failed to prove beyond a reasonable doubt that the shooting was with the intent to commit murder, then your verdict on that count should be one of not guilty." (Emphasis added.)

guilt on count one, assault with intent to murder, is the functional equivalent of the finding of the firearm element in count two.

Second, the jury also found defendant guilty on count five, carrying a pistol without a license. It is clear that for the jury to find defendant guilty on this count, the jurors unanimously must have found beyond a reasonable doubt that the weapon defendant possessed was a pistol. This situation is analogous to what occurred in *United States v. North*, 910 F.2d 843 (D.C.Cir.1990), in which the D.C. Circuit held that a District Court judge's error in his instruction was subject to the harmless-error analysis even though the judge instructed the jury that they must find, as a matter of law, an element of the crime.[2] North was charged with, among other things, aiding and abetting the obstruction of a congressional inquiry. The judge informed the jury that congressional inquiries were pending, thereby removing that element from the fact-finding function of the jury. However, the D.C. Circuit held the instruction to be harmless because "no rational jury could find that North knew of the pending congressional investigation, endeavored to obstruct it, and did so with specific corrupt intent without concomitantly finding that the investigation was pending in the first place." *North*, 910 F.2d at 894.

Further, we are mindful that a "pistol" is included in the definition of "firearm" under § 11–47–2(3).[3] Therefore, we are satisfied that these facts as found by the jury in its verdict on the count charging the defendant with carrying a pistol without a license are so closely related to the facts necessary to find the firearm element in count two that no rational jury could find those facts without also finding the firearm element. To find defendant guilty of carrying a pistol without a license, the jurors necessarily must have found that there was a firearm, just as the *North* jury must have found that there were congressional hearings so it could find that Oliver North knew of and obstructed those congressional hearings. We therefore conclude that by finding that the defendant possessed a pistol, the jury found the functional equivalent of the firearm element in count two.[4]

Moreover, an examination of the trial record discloses that the incident was regularly referred to as a "shooting" by both the prosecution and defense counsel. There was ample testimony at trial that shots were fired, and even a description of the weapon as a gun.[5] Finally, we note that the issue of the identity of the shooter

2. The District Court judge had instructed the jury "as a matter of law that congressional inquiries were pending and that Congress was authorized to inquire into arms sales [to Iran] and Contra assistance, both of which were relevant and material issues. [¶] You need only deliberate regarding the other three elements [of 18 U.S.C. § 1505] * * *." *United States v. North*, 910 F.2d 843, 892 (D.C.Cir. 1990).

3. General Laws 1956 § 11–47–2(3) states, in pertinent part, that " '[f]irearm' shall include any * * * pistol."

4. The trial justice's instruction to the jury on count five is as follows:

"The third offense for which this defendant is accused is that he did, on the 7th day of March, 1995, carry a pistol or a revolver on his person without a license. You've heard

testimony that the parties, the attorneys agreed you may consider without the necessity of formal proof that on March 7, 1995, this defendant did not have a license to carry a pistol. That's but one element of the crime. *If you find that he in fact did possess a pistol on that date, then you may find him guilty of that particular crime. If you find from all the evidence presented the State failed to prove to you beyond a reasonable doubt that he had possession of a pistol, then your verdict should be one of not guilty.*" (Emphasis added.)

5. At trial, Greenwood testified as follows on direct examination:

"Q. And can you describe the gun for the members of the jury?
"A. It was a chrome .22.
"Q. And would that be an automatic or revolver?
"A. Automatic."

was hotly contested at trial. For jurors to have returned a verdict of guilty, they must have found beyond a reasonable doubt that it was this defendant who shot Jones on that fateful day. Therefore, just as the *North* jury must have found that there were congressional hearings for it to have found that Oliver North obstructed them, so too, must this jury have found that there was a firearm for it to have found that defendant shot Jones. We therefore conclude that when the jury found the defendant guilty of assault with intent to murder, it found the functional equivalent of the firearm element.

It is defendant's contention that in subjecting the present case to a harmless-error analysis, we are, in effect, rejecting this Court's holding in *State v. Robalewski,* 418 A.2d 817 (R.I.1980). In *Robalewski,* the defendant was charged with six felony counts, including the crime of robbery. *Id.* at 819. We stated that "an essential element of the crime of robbery is the specific intention to deprive another wholly and permanently of his property." *Id.* at 821; *see also State v. McGehearty,* 121 R.I. 55, 394 A.2d 1348 (1978). In *Robalewski,* the trial justice did not instruct the jury on the element of specific intent to permanently deprive another of his property. *Robalewski,* 418 A.2d at 820. After examining that trial justice's instructions on the robbery counts, we concluded that an "ordinary jury would not have comprehended that an essential element of the crime of robbery is the intent to deprive another wholly and permanently of his property." *Id.* at 821. We found no merit in the state's contention that, for all practical purposes, the evidence presented at trial could lead only to the conclusion that the defendant possessed the requisite intent to deprive another of his property permanently. *Id.* In holding that the charge was erroneous and constituted reversible error, we concluded that we were not satisfied that the jury considered this element in light of the trial justice's failure to recite the proper instruction as an essential element of the offense. *Id.*

Although *Neder* erodes our decision in *Robalewski* somewhat, we never subjected the instruction in *Robalewski* to a rigorous harmless-error analysis. Nor are we persuaded that under the facts in *Robalewski,* the jury must have found, through its verdict on the remaining counts, the functional equivalent of an intent to permanently deprive the victim of his property. Thus, we are satisfied that the error in *Robalewski* was not harmless beyond a reasonable doubt.

After examining the trial justice's instructions on the charge of discharging a firearm from a motor vehicle, when read in the context of the jury charge as a whole, we are satisfied that the portion of the charge instructing the jury that "as a matter of law" the weapon used was a firearm amounted to harmless error beyond a reasonable doubt and did not deprive defendant of a fair trial. Although the trial justice's instruction took one narrow determination away from the jury, that error did not infect the entire trial process, nor did it render it fundamentally unfair.

## II

### Limitation of Cross–Examination

The defendant next alleges that the trial justice committed reversible error when he limited defense counsel's cross-examination of "critical state witnesses," and that he made highly prejudicial remarks to the jury concerning defense counsel's cross-examination. In applicable part, the Sixth Amendment to the United States Constitution guarantees that "the accused shall enjoy the right * * * to be confronted with the witnesses against him." Similarly, the Declaration of Rights, article 1, section 10, of the Rhode Island Constitution, provides that "[i]n all criminal prosecutions, accused persons shall enjoy the right * * * to be confronted with the witnesses against them."

■ This Court has consistently held that "[i]ncluded in the right to confront

witnesses is the fundamental right of the criminal defendant to cross-examine his or her accusers." *State v. Wiley*, 676 A.2d 321, 324 (R.I.1996) (quoting *State v. Olsen*, 610 A.2d 1099, 1101 (R.I.1992)). For cross-examination to satisfy constitutional guarantees, the trial justice is required to afford the accused "reasonable latitude" to establish or reveal bias, prejudice, or ulterior motives as they may relate to the case being tried. *State v. Brown*, 709 A.2d 465, 473 (R.I.1998) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353–54 (1974)). However, although we have steadfastly held to these principles, we have also recognized that once sufficient cross-examination has been allowed, the constitutional safeguards are satisfied, and any further cross-examination is left within the sound discretion of the trial justice. *Wiley*, 676 A.2d at 324.

■■■ We will not disturb, absent a clear abuse of discretion, the trial justice's discretionary decision to limit the scope of cross-examination. *State v. Walsh*, 731 A.2d 696, 698 (R.I.1999). "We adhere to long settled doctrine in this jurisdiction that a trial justice is given wide discretion to permit or limit counsel's cross-examination of witnesses during trial, and that discretion, absent a showing of clear abuse, will not be disturbed on appeal, and then, only if such abuse constitutes prejudicial error." *State v. Oliveira*, 730 A.2d 20, 24 (R.I.1999) (citing *State v. Anthony*, 422 A.2d 921, 924 (R.I.1980)). Accordingly, consistent with this wide discretion a trial justice may restrict cross-examination and impose limitations on the ground of harassment, unfair prejudice, confusion of the issues, the safety of witnesses, or interrogation that is repetitive or only marginally relevant. *Wiley*, 676 A.2d at 324 (citing *State v. Vento*, 533 A.2d 1161, 1164 (R.I.1987)).

■■■ We are satisfied that the cross-examinations of both Greenwood and Fontes were repetitious and bordered on harassment of the witnesses. The record reflects that defense counsel questioned Greenwood approximately fifteen times about his concern of being in trouble and going to jail. The trial justice exhibited exceptional patience and made several requests of counsel during his cross-examination of Greenwood to refrain from repeatedly making the same inquiries. However, defense counsel continued to persist in his repetitive cross-examination, and this practice resurfaced during the testimony of Fontes. The record reflects that defense counsel questioned Fontes at least twelve times about the agreement he made with the state in exchange for his testimony against defendant. Finally, at the point of exasperation, the trial justice ordered counsel for both sides to side bar and informed defense counsel that he would restrict the cross-examination under Rule 403 of the Rhode Island Rules of Evidence because the repetitious examination was an undue consumption of time.[6] The trial justice then explained to the jurors his reason for restricting the cross-examination, as follows:

> "if questioning is repetitive or if it confuses the issue, or if it requires an undue consumption of the Court or juror's time, the Court can rule such questioning, if it has very little if any probative value, to be objectionable. The Court will exercise its discretion in this matter and restrict that cross-examination."

It is this explanation to the jury that defendant assigns as prejudice.

We conclude that the trial justice acted well within his discretion when he limited the repetitive nature of defendant's cross-examination. Indeed, we recognize an ob-

---

**6.** Rule 403 of the Rhode Island Rules Evidence provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju-
dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

ligation on the part of a trial justice to restrict such laborious and repetitive cross-examination. Therefore, we reject defendant's contention that the trial justice erred when he limited defendant's cross-examination and instructed the jury accordingly, and conclude that the trial justice acted appropriately under the circumstances.

### III

### Prior Consistent Statements

■ The defendant argues that the trial justice erred by admitting into evidence the testimony of Det. Springer about statements Greenwood made to him. The defendant contends that these statements were inadmissible hearsay under Rule 802 of the Rhode Island Rules of Evidence and that by allowing them "for corroboration," the trial justice committed reversible error.

At trial, Det. Springer related an out-of-court statement that Greenwood made to him during the investigation. Specifically, Springer testified that Greenwood told him he was

"with several subjects to include a Charles Fontes, a subject known as Bucky, a subject John Hammond, and also the defendant Adrian Hazard. That they had been together prior to the shooting; that they were all in the car and present at the time of the shooting, and also after the time of the shooting, and that the assailant who committed the offense was Adrian Hazard."

Much of this testimony, admitted on direct examination over defense counsel's objection, amounted to a summary of Greenwood's in-court direct testimony. It is clear that this out-of-court statement was introduced to rehabilitate Greenwood, whose credibility had been impeached relative to his motive to testify. Ultimately, this testimony was introduced to corroborate Greenwood's version of what happened, that is, that it was defendant who shot Jones. We agree with defendant that it was error to admit this testimony for corroboration. The Rhode Island Rules of Evidence do not authorize the admission of out-of-court statements for the purpose of corroboration. However, the state contends that these out-of-court statements by Greenwood are not hearsay, but are instead prior consistent statements of the witness that qualify under Rule 801 as non-hearsay and, as such, are admissible substantively. We disagree.

Rule 801 of the Rhode Island Rules of Evidence provides, in pertinent part:

"(d) *Statements Which Are Not Hearsay.* A statement is not hearsay if:

(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive * * *."

Prior to the adoption of our current rules of evidence, "a prior consistent statement could be introduced not for the proof of the matter asserted but to rehabilitate the credibility of a witness whose veracity had been attacked by a suggestion of recent fabrication." *State v. Damiano,* 587 A.2d 396, 400–01 (R.I.1991). Our adoption of the current rules of evidence changed the effect of a prior consistent statement by defining it as non-hearsay, thus admissible as substantive proof if "offered to rebut an express or implied charge against [a witness] of recent fabrication or improper influence or motive." *Id.* at 401 (quoting Fed.R.Evid. 801).

We conclude that Det. Springer's testimony did not qualify as a prior consistent statement of Greenwood because Greenwood's statement was made after the shooting, the event which precipitated any motive to fabricate that Greenwood may have formed. Therefore, it did not antedate the source (Greenwood's involvement

in the shooting) upon which the bias, interest or improper influence originated.

In *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), the United States Supreme Court stated that under the Federal Rules of Evidence, prior consistent statements may not be admitted to counter any type of impeachment or to bolster the testimony of a witness merely because she has been discredited, but instead admissibility is confined to those statements offered to rebut a charge of "recent fabrication or improper influence or motive." *Tome*, 513 U.S. at 157, 115 S.Ct. at 701, 130 L.Ed.2d at 582 (quoting Fed.R.Evid. 801(d)(1)(B)). The Court in *Tome* embodied in this limitation the common law temporal requirement that the consistent statements must have been made before the alleged influence or motive to fabricate arose. In codifying this antecedent element into Rule 801(d)(1)(B) of the Federal Rules of Evidence, which is identical to the Rhode Island rule, the *Tome* Court reasoned that the introduction of out-of-court statements that predate the alleged fabrication, influence, or motive was a direct assault on the accusation that the testimony is a recent fabrication or results from an improper influence or motive. Therefore, it works as a "square rebuttal of the charge that the testimony was contrived as a consequence of that motive." *Tome*, 513 U.S. at 158, 115 S.Ct. at 701, 130 L.Ed.2d at 583.

In *Damiano*, we recognized this common-law temporal requirement in concluding that the repetition of a statement made to a police officer by a witness did not qualify as a prior consistent statement because it did not antedate the encounter alleged to have improperly produced the original statement. *Damiano*, 587 A.2d at 401. In *State v. Kholi*, 672 A.2d 429 (R.I. 1996), the defendant was charged with sexually assaulting his stepdaughters. We determined that the statements of a stepdaughter to a school counselor were admissible as prior consistent statements because the inculpatory statements were made prior to the occurrence of the numerous improper motives of the stepdaughter, as suggested by defense counsel during cross-examination.

■■■ In the instant case, defense counsel's questions implied that Greenwood's accusations against defendant were motivated by his desire to extricate himself from the serious legal predicament he was in due to the fact that his car was involved in the crime, and that by his presence during the commission of the crime he may have violated the terms of his bail relative to another criminal information. Each motive charged by the defendant predated Greenwood's statements to Det. Springer, thus rendering the statements inadmissible as prior consistent statements under *Damiano*. Because the trial justice erred in admitting these statements for corroboration and they are not admissible as prior consistent statements under Rule 801(d)(1)(B), they constitute hearsay. Nevertheless, given the existence of other overwhelming inculpatory evidence, we deem such error to be harmless beyond a reasonable doubt and conclude that Det. Springer's testimony regarding Greenwood's statements was insignificant in light of the factual record in this case.[7]

---

7. It is important to note that Det. Springer's testimony about the out-of-court statements made by Greenwood constituted a minuscule portion of his considerable testimony. That portion of the testimony to which defense counsel objected and is at issue is as follows:

"Q: Mr. Greenwood tell you who was operating the vehicle?

\* \* \*

"A: At the time of the shooting, yes, he did.

"Q: Who did he describe that as?

"A: Charles Fontes, Chucky Fontes.

"Q: Did Mr. Greenwood tell you how the defendant was holding the gun at the time of the shooting?

"A: Yes, he did.

"Q: And how was he able to describe that for you?

\* \* \*

"A: At the time of the shooting the defendant's arm was outstretched, and in

## IV
### Aiding and Abetting Instruction

 Lastly, defendant argues that the trial justice erred in briefly instructing the jury on the crime of aiding and abetting. The defendant contends that the evidence presented at trial supported either a finding that defendant was the principal in the crime or that he did not participate in the shooting whatsoever. We disagree.

"In passing on the sufficiency of a trial justice's instruction, we determine how a jury composed of ordinary intelligent lay persons listening to [the charge] at the close of trial would have appreciated the instructions as a whole." *State v. LaRoche*, 683 A.2d 989, 997 (R.I.1996) (quoting *Robalewski*, 418 A.2d at 821). We assume that the actual jurors in the case before us would have similarly understood the trial justice's instructions to the jury.

At trial, Fontes and Greenwood both testified that Fontes drove the car. Each also testified, and the jury found, that Hazard was the shooter. Therefore, Fontes's participation in the incident made him an aider and abettor to the shooting. It is well settled that "one who aids and abets in the commission of [a] crime and is also present at the scene may be charged * * * as a principal." *State v. McMaugh*, 512 A.2d 824, 831 (R.I.1986). Therefore, although confusing as it relates to the defendant, it was appropriate for the trial justice to briefly explain the theory of aiding and abetting in the course of his instructions because it refers to the participation of Fontes.

## CONCLUSION

Accordingly, for the foregoing reasons, the defendant's appeal is denied and the judgments of conviction are affirmed. The papers in this case are remanded to the Superior Court.

fact it was outside the window of the