**STATE**

v.

**Joseph FILLION.**

**No. 2000–456–C.A.**

Supreme Court of Rhode Island.

Nov. 28, 2001.

Jane M. McSoley, Aaron L. Weisman, Stacey Pires Veroni, Providence, for Plaintiff.

Andrew H. Berg, James P. Howe, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, Joseph Fillion, appeals from his Superior Court judgments of conviction on three counts of domestic simple assault, one count of domestic disorderly conduct, one count of simple assault, and one count of violating a domestic no-contact order.

In January 2000, Fillion was charged by indictment with six counts of domestic simple assault, one count of domestic assault with a dangerous weapon, one count of domestic disorderly conduct, and one count of simple assault. Fillion previously had been charged by information with three counts of disorderly conduct and by another information with stalking and violating a no-contact order. The stalking charge was dismissed, and the remaining charges against Fillion were consolidated for trial over his objection.

This case came before a single justice of this Court, who directed the parties to show cause why this appeal should not be summarily decided. After hearing their arguments and considering their legal memoranda, we conclude that cause has not been shown and proceed to summarily decide the appeal.

The complaining witness, Tori–Lynn Heaton–Fillion, began dating Fillion in July 1997 while both were working for the Cranston police department. They moved in together in November 1997 and were married on July 6, 1998. Ms. Heaton characterized her premarital relationship with Fillion as "volatile," and at trial she described numerous events on various dates, both before and after they were married, which form the basis of the charges against Fillion.

Fillion raises three issues on appeal. First, he argues that the trial justice erred in refusing to allow cross-examination of Ms. Heaton concerning her potential plans to write a book about her experiences, her offer to appear on a television newsmagazine, and her request for alimony in her pending divorce proceeding. Second, Fillion contends that the trial justice improperly excluded evidence of Ms. Heaton's previous relationship with another member of the Cranston police department. Third, Fillion asserts that he was irreparably

prejudiced by the consolidation of the criminal counts against him for trial.

## I. Cross–Examination of Ms. Heaton

Before trial, the state filed a motion *in limine* to preclude the admission into evidence of notes prepared by Ms. Heaton's therapist during the course of her treatment. The notes, which were prepared after all charges had been brought against Fillion, indicate that Ms. Heaton spoke of plans to write about her experiences with Fillion as well as being contacted by the producers of *48 Hours*, a television newsmagazine. The court granted the motion to exclude this evidence.

Defense counsel, intending to show a financial motive for Ms. Heaton's testimony, attempted at trial to solicit this information during his cross-examination of her. The state objected to this questioning, and the trial justice sustained the objection.

Defense counsel again attempted to show Ms. Heaton's financial motive for making her complaints by asking Ms. Heaton whether she proposed the sum of $30,000 to settle her then pending divorce proceeding against Fillion in Family Court. The state objected to this, and the trial justice again sustained the objection, finding the Family Court proceedings not relevant to the criminal charges against Fillion.

 Fillion argues that the trial justice's rulings restricted his cross-examination of Ms. Heaton and violated his fundamental right to confront witnesses against him. This right is guaranteed by the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution. *State v. Bustamante*, 756 A.2d 758, 765 (R.I.2000) (citing *State v. Wiley*, 676 A.2d 321, 324 (R.I.1996)). The permissible scope of cross-examination includes questions that tend to establish the witness's bias or motive, and this Court is "especially solicitous of cross-examination for bias or motive on the part of a defendant's primary accuser." *State v. Olsen*, 610 A.2d 1099, 1101 (R.I.1992) (quoting *State v. Beaumier*, 480 A.2d 1367, 1372 (R.I.1984)). The scope of cross-examination for the purpose of impeaching a witness's credibility is not unlimited, however, and it is permissible for a trial justice to reject evidence that is either not relevant or "not probative of any bias or motive." *State v. Texter*, 594 A.2d 376, 377 (R.I. 1991) (citing *State v. Veluzat*, 578 A.2d 93, 95 (R.I.1990)).

 This Court has noted that the denial of an opportunity to cross-examine an adverse witness "does not fall into the category of constitutional errors that are automatically deemed prejudicial." *State v. Canning*, 541 A.2d 457, 461 (R.I.1988) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 682, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674, 685 (1986)). If the error is harmless beyond a reasonable doubt, the conviction need not be set aside. *Id.* (citing *Rose v. Clark*, 478 U.S. 570, 576, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460, 469 (1986)). To determine if an error is harmless, the Court will consider the following factors: (1) the importance of the witness's testimony to the prosecution's case; (2) "whether the testimony was cumulative"; (3) the presence or absence of corroborating or contradictory evidence; (4) "the extent of cross-examination otherwise permitted"; and (5) "the overall strength of the prosecution's case." *Bustamante*, 756 A.2d at 766 (quoting *Texter*, 594 A.2d at 378).

 Although Ms. Heaton's testimony was central to the prosecution's case, the inculpatory evidence elicited at trial, which included both testimonial as well as exhibit form of evidence, was more than sufficient to sustain Fillion's conviction. Even were

we to assume, arguendo, that the trial justice erred in preventing defendant from cross-examining his accuser on these subjects, it stretches credulity to believe that the jurors would have considered Ms. Heaton's testimony differently had they heard evidence of the possibility of Ms. Heaton's writing a book, appearing on a television program, or requesting alimony. The fact that Fillion was acquitted of seven of the thirteen charges against him indicates to us that the trial jury took a discerning view of Ms. Heaton's testimony. The record also demonstrates to us that defense counsel was permitted to conduct an exhaustive and thorough cross-examination of Ms. Heaton. Thus, any impropriety that may have resulted from the trial justice's alleged restriction of cross-examination was harmless beyond a reasonable doubt.

## II. Ms. Heaton's Previous Relationship

Fillion next contends that the trial justice erred in granting the state's motion *in limine* to exclude evidence of Ms. Heaton's previous relationship with a member of the Cranston police department, Edward Evans, and the violence that allegedly occurred during that relationship. Fillion asserts that this evidence would have refuted Ms. Heaton's assertion that she did not report Fillion's abuse because she did not recognize that the relationship was abusive. Ms. Heaton gave various responses at trial for not reporting the acts of abuse by Fillion, ranging from her disbelief of the threats made by Fillion to her fear that Fillion would be dismissed from his employment as an officer in the Cranston police department.

Fillion contends that had he been permitted to call Evans as a witness, his testimony, if permitted, would have disclosed that Evans dated Ms. Heaton in 1993 or 1994, that she attacked and injured him, and that he reported the attack to the Cranston police department. The trial justice indicated that this evidence, which predated the events charged in the instant case by three years and which failed to prompt any charges being brought against Evans or Ms. Heaton, simply would amount to character evidence. He concluded that such testimony concerning Ms. Heaton's relationship with Evans was "totally irrelevant" with regard to the conduct of the parties that was the subject matter in the present case.

Fillion contends here that the evidence about Ms. Heaton's relationship with Evans would have been relevant and admissible to show Ms. Heaton's propensity toward violence and would serve to substantiate Fillion's claim of self-defense. Fillion relies on this Court's holding that a defendant who asserts the defense of self-defense may adduce relevant evidence of specific violent acts perpetrated by the victim against third parties, provided that the defendant was aware of these acts at the time of his encounter with the victim. *State v. Tribble*, 428 A.2d 1079, 1085 (R.I. 1981). Under *Tribble*, however, a proper foundation must first be established before such evidence will be admitted to show the victim's previous violent tendencies, *id.*, and the defendant, to have that evidence admitted, must prove that he was aware of the events, that the events were not remote in time, and that the events were of such a quality as to be capable of contributing to the defendant's fear of the victim. *Id.* Whether that proper and required foundation has been laid is left to the sound discretion of the trial justice. *Id.* at 1086 (citing *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748, 752 (1971)).

In this case Fillion testified, without the jury present, that he was aware of a relationship between Ms. Heaton and Evans

and that, while he was on patrol one evening in 1994, he heard a dispatch call about a domestic disturbance at Evans's home. Fillion testified that he spoke with the officer who responded to the call and who filed a report thereon and that the officer told him that Ms. Heaton had assaulted Evans. Fillion admitted, however, that he had no firsthand knowledge of what actually had occurred between Ms. Heaton and Evans on that particular occasion in 1994.

We have long acknowledged the trial justice's duty to determine whether evidence sought to be admitted is relevant for the purpose for which it is offered. *State v. Cote,* 691 A.2d 537, 543 (R.I.1997). We have likewise acknowledged that questions pertaining to the relevance of evidence sought to be admitted also are left to the sound discretion of the trial justice, and this Court will not disturb a trial justice's ruling absent a showing of an abuse of discretion. *Id.*

In this case, the trial justice determined that the evidence Fillion sought to have admitted concerning the relationship between Ms. Heaton and Evans was not relevant to the issues present in the trial before him. He noted that the alleged incident occurred some three years before Fillion and Ms. Heaton began dating, and some four years before they were married. He also noted that Fillion did not witness the alleged incident between Evans and Ms. Heaton nor have firsthand knowledge of the incident. Additionally, Fillion later dated and married Ms. Heaton with whatever knowledge he had of the alleged incident, which indicated that he was not in fear of her. We are satisfied that the trial justice did not abuse his discretion in excluding the evidence of Ms. Heaton's previous relationship with Evans.

### III. Consolidation of Criminal Counts

The final issue raised by Fillion involves the trial justice's decision to consolidate the charges made against him in an indictment and in two separate informations to be tried together in one trial. Before trial, the state moved to consolidate the two informations and the indictment returned in the instant case. The trial justice granted the motion over Fillion's objection. Fillion argues that he was prejudiced by this consolidation because he did not want to testify in his own defense against certain charges, and he specifically points to the charge of violating a no-contact order. He argues that during cross-examination he was forced to admit contacting Ms. Heaton after the no-contact order had been issued.

 The question of joinder and severance of multiple charges against a particular defendant lies within the sound discretion of the trial justice, and we will not disturb his or her decision on appeal absent the showing of a clear abuse of discretion. *State v. Evans,* 742 A.2d 715, 718 (R.I.1999); *State v. Raymond,* 446 A.2d 743, 744 (R.I.1982). Joinder is appropriate if the offenses charged "could have been joined in a single indictment, information, or complaint." Super.R.Crim.P. 13. "Two or more offenses may be charged [together] * * * * if [they] * * * are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Super.R.Crim.P. 8(a). *See also State v. Cline,* 122 R.I. 297, 327–33, 405 A.2d 1192, 1208–11 (1979). In this case, the various charges against Fillion contained in the indictment and the two informations were of a similar character and involved a series of connected events that allegedly occurred during the hectic relationship between Fillion and Ms. Heaton.

 Fillion argues that joinder of the charges prejudiced his right to a fair trial

on the charge of violating the no-contact order. He maintains that the record is clear about the prejudicial effect of joinder because of his contention that he did not intend to testify in defense of that charge. This Court has held that a vague and indefinite assertion such as made here by Fillion does not rise to the level of prejudice necessary to establish an abuse of discretion on the part of a trial justice in refusing severance under Rule 14 of the Superior Court Rules of Criminal Procedure or its federal counterpart. *State v. Lassor,* 555 A.2d 339, 347 (R.I.1989); *State v. Sharbuno,* 120 R.I. 714, 717, 390 A.2d 915, 917 (1978).[1]

Had Fillion not admitted on cross-examination to violating the no-contact order, there was more than sufficient evidence from the various trial witnesses to permit the jury to find beyond a reasonable doubt that he had done so. That evidence included Ms. Heaton's testimony that Fillion called her on July 23, 1999, after the no-contact order had been issued earlier that day; the videotape of Ms. Heaton's call log from her answering machine, which was connected to her computer; the audio recording of the call; and the witness who testified he was with Ms. Heaton when Fillion called and recognized Fillion's voice and that when he called the number left on the answering machine, Fillion answered the telephone. Fillion's testimony admitting to violating the no-contact order was cumulative, and the joinder of the no-contact order charge with the other related charges caused him no prejudice. As was aptly noted in *Cline,* "[w]e know of no doctrine in the law that is designed to insulate defendant from relevant truths, even if such truths might lead the jury to draw less favorable inferences concerning defendant than if they were not exposed." *Cline,* 122 R.I. at 331, 405 A.2d at 1210.

For the foregoing reasons, the defendant's appeal is denied and dismissed. His judgments of conviction are affirmed, and the papers of this case are remanded to the Superior Court.

---

1. We held in *State v. Sharbuno,* 120 R.I. 714, 719, 390 A.2d 915, 918 (1978), that a defendant's right to a fair trial is not prejudiced by joinder of charges against him if "the outcome would have been the same had separate trials been held." It is clear to us from the record before us that a separate trial on the violation of the no-contact order made against Fillion would not have had a different result.