STATE of Rhode Island

v.

Luigi MANOCCHIO.

Nos. 84–43–C.A., 84–299–C.A.

Supreme Court of Rhode Island.

April 6, 1987.

James E. O'Neil, Atty. Gen., Thomas M. Dickinson, Sp. Asst. Atty. Gen., Providence, for plaintiff.

John A. MacFadyne, Jr., Barbara Hurst, Asst. Public Defender, Amicus Michael P. DiBiase, A.C.L.U., Amicus, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on remand from the Supreme Court of the United States for reconsideration in light of *Delaware v. Van Arsdall,* — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The remand order directs this court to reconsider its opinion in *State v. Manocchio,* 496 A.2d 931 (R.I.1985), in light of a harmless-error analysis. We hereby comply with this directive after having the benefit of further briefs and arguments from the state and the defendant.

We set forth in our earlier opinion the factual details as a result of which defendant was charged as an accessory before the fact and as a conspirator in the commission of the murders of Rudolph Marfeo and Anthony Melei, who were shot to death at a Pocasset Avenue market on April 20, 1968. Defendant Manocchio was indicted in 1969 but fled the jurisdiction so that he evaded arraignment for ten years. He was ultimately arraigned on July 6, 1979, and in June of 1983 he was found guilty after a jury trial of two charges of accessory before the fact and one charge of conspiracy.

The principal witness against Manocchio was, according to his testimony, a participant in the planning of the murders who later became an informer for law enforcement authorities. The informer, John J. "Red" Kelley, testified concerning the planning of the murder and his own role in implementing the plan, which part included reconnaissance, purchase of equipment, preparation of weapons, and the planning of an escape route.

As we pointed out in our previous opinion, at the time of defendant's trial, Kelley, then sixty-eight years of age, was recounting a series of events that had occurred fifteen years earlier. In the course of an identification-suppression hearing, defense counsel sought to probe Kelley's ability to remember and recount the circumstances of Manocchio's involvement in the two murders. In the course of cross-examination in the absence of the jury, Kelley disclosed to defense counsel that he was being treated for "premature Alzheimer's disease," a condition that affected his mind, memory, and thought processes. The trial justice determined that Kelley was a competent witness and allowed him to testify before the jury concerning the details of his participation with defendant and others.

In attempting to cross-examine Kelley concerning his mental condition, defense counsel propounded the following questions to which the following answers were given interspersed by objections that were sustained by the trial justice:

"Q. [Mr. Leppo:] Now, yesterday you told us you were taken to the House of Corrections in New Bedford. Do you remember saying that yesterday?

"A. [Kelley:] I don't recollect that.

"Q. You don't recollect saying New Bedford yesterday?

"A. I don't recollect now.

"Q. Do you have a problem with your memory?

"A. Yes, I do have a problem with my memory.

"Q. And the problem with your memory is that you cannot remember saying Thursday what you said on a Wednesday, sir?

MR. LEACH [the prosecutor:] Objection, Your Honor.

THE COURT: Sustained.

"Q. Do you have a problem with your memory you cannot remember what you said to me two questions ago?

"A. Yes, I do.

"Q. So that if I were to ask you to repeat your answer as to where you went with Mr. Rico, you would have forgotten that answer?

MR. LEACH: Objection, Your Honor.

THE COURT: You may answer.

"A. That's a possibility.

"Q. So that you have difficulty with that memory?

"A. I do.

"Q. And that memory, sir, has been failing you for some period of time now, is that correct?

MR. LEACH: Objection, Your Honor.

THE COURT: Sustained.

"Q. Has that memory been failing you?

MR. LEACH: Objection, Your Honor.

THE COURT: Sustained.

"Q. How long have you suffered from that condition, Mr. Kelley?

MR. LEACH: Objection, Your Honor.

THE COURT: Sustained."

In commenting upon this limitation of cross-examination, we pointed out that the only evidence Manocchio was allowed to place before the jury regarding Kelley's mental condition was that he had a "problem" with his memory. Defense counsel was not permitted to elicit from the witness for the benefit of the jury Kelley's treatment for premature Alzheimer's disease and the many other different conditions for which he was being treated. We also pointed out that prior to the trial Kelley had participated in the Federal Witness-Protection Program, that he received a new identity, and relocated to an undisclosed area. We thus observed that Manocchio's only possibility for acquisition of information concerning Kelley was through the use of cross-examination.

We then engaged in an analysis of the right to confrontation under the Sixth Amendment to the United States Constitution as well as under article I, section 10, of the Rhode Island Constitution. We cited *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in emphasizing the central importance of the right of cross-examination to the implementation of the confrontation clause.

We further suggested that in *State v. DeBarros*, 441 A.2d 549 (R.I.1982), and *State v. Freeman*, 473 A.2d 1149 (R.I. 1984), we had established a per se error rule in which the defendant has been fully precluded from effective cross-examination on a pertinent issue. We, of course, were guided in part on these cases by the state-

ment of the United States Supreme Court in *Davis v. Alaska*, in which the Court observed "[Davis] was thus denied the right of effective cross-examination which 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it * * *.'" 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.

In *Delaware v. Van Arsdall*, — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Court indicated that despite the foregoing quotation from its opinion in *Davis*, it had not really intended to promulgate in that opinion a doctrine that failure to allow cross-examination would necessitate an automatic reversal. The Court pointed out that in the *Davis* case the testimony of a juvenile, in respect to whom cross-examination concerning his probationary status was not permitted, was critical to the prosecution's case. The Court contrasted that situation with the cross-examination of a witness named Fleetwood in the *Van Arsdall* case. There the Supreme Court of Delaware had applied a per se reversal rule (as it thought it was required to do pursuant to the clear language of *Davis v. Alaska*) even though the state had argued that the error was harmless since Fleetwood's testimony was cumulative in nature and unimportant to the outcome of the case.

Justice Rehnquist, speaking for a majority of the Court, held that the *Davis* rule was subject to a harmless-error analysis pursuant to the principle enunciated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We are of the opinion that, in effect, a harmless-error analysis is satisfied by the observations that we made in our prior opinion.

We pointed out that it was axiomatic that the ability of a witness to remember accurately and to relate events in question was of crucial importance to a jury's assessment of that witness's credibility. We emphasized the enormous importance to the prosecution's case and to the defense of Kelley's testimony. We also pointed out

the great significance of the possible defects in his memory:

"In the case presently before us, an exploration of Kelley's possible memory defects was especially warranted. When Kelley took the witness stand before the jury that convicted Manocchio, he was the only witness who could link Manocchio with the fifteen-year-old murders of Melei and Marfeo. It is readily apparent to us that Kelley's credibility was the only real issue before the jury. As the state's only witness with the ability to detail Manocchio's participation in the murders, the jury's determination of whether or not to convict him rested entirely upon its assessment of Kelley's competency and veracity.

"In addition, this was at least the fourth time since the murders had occurred that Kelley had been required to relate his story under oath, admitting for the first time on the eve of Manocchio's trial that all of his prior testimony had been tainted in significant respects with perjury. There was an obvious danger here that Kelley's testimony involved far more recitation than recollection." *State v. Manocchio,* 496 A.2d at 934–35.

A very strong suggestion could have been made, in the event that cross-examination had been appropriately allowed that Kelley had experienced on occasion difficulty of distinguishing between fact and fiction.

Applying the harmless-error analysis to the facts of the instant case, and particularly those elements of cross-examination that were not permitted concerning Kelley's mental disease and the inferences that might be drawn therefrom, not only are we convinced that this error was not harmless beyond a reasonable doubt but we further hold that the error was extremely harmful to the development of Manocchio's defense by restricting his ability to attack the credibility of the most important witness presented in support of the charges against him.

In light of our determination of this issue, it is unnecessary for us to consider additional issues raised by the amicus curiae on behalf of the defendant in the course of the remand hearing.

For the reasons stated, the defendant's appeal is hereby sustained, the judgments of conviction are again vacated, and the papers in the case are remanded to the Superior Court for a new trial.