**Supreme Court**

No. 2013-124-C.A.

(P1/12-1521AG)

|  |  |
|---|---|
| State | : |
| v. | : |
| Victor Arciliares. | : |

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                          :

        v.                     :

Victor Arciliares.             :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.** The defendant, Victor Arciliares, appeals from a judgment of conviction entered after a jury trial in Providence County Superior Court. The defendant was found guilty of five offenses, most notably murder in the first degree of Alfredo Barros, in violation of G.L. 1956 § 11-23-1. This case came before the Supreme Court for argument on October 29, 2014. The defendant contends that the trial justice erred when he curtailed the extent to which the defendant was allowed to cross-examine a key police witness. The defendant claims that the exclusion of the proffered evidence was reversible error and merits a new trial. For the reasons set forth in this opinion, we agree, vacate the defendant's convictions, and remand the case to the Superior Court for a new trial.

**I**

**Facts and Travel**

On October 30, 2010, at about 3 a.m., Alfredo "Pauly" Barros was shot and killed as he sat behind the wheel of a motor vehicle at a Pawtucket intersection. In Barros's car were two

passengers, one of whom, Ruben Gomes, was injured in the shooting. That night, during the course of their investigation, Pawtucket police discovered several shell casings at the intersection of George and Marrin Streets, but they recovered no weapon, nor was any weapon ever presented at trial. The passengers in Barros's car each gave statements to police. Each of them mentioned a black BMW from which shots were fired. However, as was the case with the weapon, that vehicle was never located.

The homicide investigation soon focused on a Shell gas station on Thurbers Avenue in Providence, because police had obtained information that Barros and his passengers may have been involved in an "altercation" there earlier that evening. The investigation dragged out over several months, but by June 2011, eight months later, no arrests had been made. However, a break in the case finally arose when the lead detective, Det. Richard LaForest,[1] received a call from an investigator at the Adult Correctional Institutions (ACI) informing him that an inmate had information about the Barros murder. Ultimately, that jailhouse informant would provide information that would implicate defendant as the shooter in the October 30, 2010 murder.

**Indictment and Trial**

On May 30, 2012, after hearing testimony from the informant, a grand jury returned a seven-count indictment arising out of the shooting.[2] The six counts against defendant were counts: (1) murder in the first degree of Alfredo Barros, in violation of § 11-23-1; (2) discharging a firearm while committing a violent crime, the murder of Alfredo Barros, in violation of G.L. 1956 § 11-47-3.2; (3) discharging a firearm from a motor vehicle in a manner

---

[1] Among the parties' briefs, trial exhibits, and grand jury transcripts, Det. LaForest's last name is spelled variably as, "LaForest" and "Laforest." For consistency, we will use "LaForest."

[2] All except count 6 pertained to defendant. In count 6 of indictment No. P1/12-1521BG, it was alleged that Rolando Rojas did murder Alfredo Barros, in violation of G.L. 1956 § 11-23-1. Rojas and Arciliares were not tried together; therefore, neither Rojas nor count 6 of the indictment have any relevance to this appeal.

that created a substantial risk of death to Ruben Gomes, in violation of § 11-47-51.1; (4) assault with intent to murder Ruben Gomes, in violation of G.L. 1956 § 11-5-1; (5) use of a firearm in the attempted commission of a violent crime resulting in an injury to Ruben Gomes, in violation of § 11-47-3.2; and (7) conspiracy to do an unlawful act, to wit, murder, in violation of G.L. 1956 § 11-1-6.

On January 17, 2013, a jury trial began before a justice of the Superior Court. The state called Dr. Priya Banerjee, an Assistant Medical Examiner, who testified that the manner of death was homicide by gunshot wounds. In her testimony, the medical examiner made use of a number of autopsy photographs. One image was a color photograph that depicted the dissected heart and lungs of the victim. The defendant objected to this photograph. At sidebar, defense counsel called the photograph "really, really gruesome," and said, "the only purpose for bringing [it] in is to inflame and to prejudice the jury unnecessarily." The state argued that the photograph was necessary to show the trajectory of the bullet and to prove there was only one shooter involved. The trial justice found the state's argument convincing and said, "[a]s far as autopsy photographs are concerned, I would suggest to you this one is pretty tame, and I'm going to overrule the objection." The photograph entered evidence as trial exhibit No. 19.

The state also presented the testimony of several witnesses who had been present at the scene of the Barros murder. Those witnesses included Ptlm. Justin Gould of the Pawtucket Police Department, as well as Ruben Gomes and Jason DaCruz, the two passengers in Barros's car. Lastly, the state presented the core of its case; the testimony of Det. LaForest and Raymond Baccaire, the cooperating witness, who recounted defendant's alleged jailhouse confession. The defendant alleges that it was during the testimony of Det. LaForest that the error of law occurred.

**Detective LaForest's Testimony**

Detective LaForest was called to the scene of the Barros murder early on that October morning and was in charge of the investigation that followed. In that investigation, Det. LaForest visited the Thurbers Avenue Shell station, from which Barros's car had traveled, seeking video surveillance footage from the night of the murder. Detective LaForest went to retrieve the video because he had received information that "there was an altercation with the deceased at that Shell station." Detective LaForest testified that the video showed that there had been between 50 and 100 people at the Shell station that night, including three Providence police officers who had responded to an earlier fight that did not involve Barros or his passengers. Detective LaForest testified that, when he culled the video, he was able to confirm that defendant was among the crowd at the Shell station that evening. The state later introduced at trial a photograph of defendant from that video. The detective said he was familiar with defendant's appearance because he had been "in the presence of [defendant]," on May 17, 2011.[3] Another photograph from that evening showed defendant standing outside at the gas pumps with a man named Rolando Rojas and another man. A third photograph showed Rojas getting into a black BMW automobile, but that picture did not include either defendant or the third man from the earlier picture.

Detective LaForest then testified about his meeting with Raymond Baccaire, the cellmate of defendant, who contended that defendant had admitted to him that he was the shooter in the Barros murder. That meeting was prompted by information Det. LaForest had received from ACI Special Investigator Nuno Figueiredo. Investigator Figueiredo relayed to Det. LaForest that Baccaire had information about a homicide. Detective LaForest denied that he had revealed to

---

[3] On this day, May 17, 2011, defendant was confined to the ACI on an unrelated charge.

Investigator Figueiredo anything beyond "just the basic" facts of the Barros murder. Detective LaForest's meeting with Baccaire occurred on June 7, 2011, and, until that time, the investigation was simply "ongoing," and no arrests had been made.[4]

On cross-examination, Det. LaForest admitted that in his review of the gas station video, he did not see any "altercation" between the members of Barros's car and defendant, even though he had looked for one. The defendant's counsel then brought up Det. LaForest's May 17, 2011, meeting with defendant.[5] Detective LaForest testified that he remembered the meeting that had taken place at the ACI, but the state objected to defendant's next question.[6] At sidebar, defense counsel proffered the evidence that she hoped she would elicit from Det. LaForest: that what had transpired at his meeting with Arciliares may have been "one of the sources of Baccaire's information about the crime."[7] Defense counsel said, "I'm not going to ask [Det.

---

[4] At that time, little information about the investigation had been released publically. Detective LaForest testified on direct examination:

> "Q: And because this investigation was ongoing by the time that you met with Mr. Baccaire, and no arrests had been made, to your knowledge, had any of that documentation been released outside of the Pawtucket Police Department or the State of Rhode Island Attorney General's Office?
> "[Defense Counsel]: Objection.
> "[Trial Justice]: Overruled.
> "A: No, it was not."

[5] From the cross-examination of Det. LaForest:

> "Q: Now, when you had met—I think you testified that you had met my client, Victor Arciliares, at the ACI on May 17th of 2011; correct?
> "A: I did state that, yes."

[6] From the cross-examination of Det. LaForest:

> "Q: And you went there to talk to Mr. Arciliares that day, didn't you?
> "[Assistant Attorney General]: Objection.
> "[Trial Justice]: Let's have a conference."

[7] Defense counsel's argument at sidebar was that at that meeting:

LaForest] what my client said." The Assistant Attorney General disagreed saying, "it would in a sense be almost a Harnois issue."[8] See State v. Harnois, 638 A.2d 532, 535-36 (R.I. 1994) (holding that the defendant had a right to refuse to testify, but adding that "[h]e may not testify by other means, including by way of the unsworn statements made to police"). The prosecutor also suggested that any subsequent questioning on the ACI meeting on cross-examination would be outside the scope of direct examination, because on direct Det. LaForest never specifically said the meeting was at the ACI, simply that he had at one time seen defendant.[9] At this point, the trial justice sustained the objection to the question, not specifying whether his ruling was predicated on this Court's holding in Harnois or that it exceeded the scope of direct examination. The cross-examination of Det. LaForest continued, with the detective testifying that no murder weapon was ever found, that no black BMW specified by witnesses and seen on the gas station video was ever located, and that no connection was ever established by the police between

---

"Victor saw photographs, the photographs from the Shell station. This is one of the things that I think Baccaire will testify to, that he spoke with my client about it, and it is our position that this is one of the sources of Baccaire's information about the crime. I'm not going to ask him what my client said, as if I want to ask [defendant] through this witness."

[8] In full, the prosecutor said:

"My position is that if she wants that evidence spread on the record, it would in a sense be almost a Harnois issue. She's trying to get in through this detective the fact that Mr. Arciliares saw photographs, and then use that fact almost as a substitute for the defendant's testimony."

[9] The prosecutor's argument and the ruling by the trial justice was as follows:

"[Defense counsel]: Judge, the witness brought it up. I think he mentioned May 17th, meeting with my client, and I'm entitled to ask.
"[Assistant Attorney General]: On direct he didn't say where he had seen it. It was the question of, did you have occasion to see Mr. Arciliares prior to trial, and he said May 17th, and specifically stayed away from the fact [defendant] was in prison.
"[Trial Justice]: I think I'm going to sustain the objection at this point. Later on, if something evolves that would invite this, we'll take another look at it."

Barros or the occupants of his car and defendant. The May 17 meeting was not discussed further and, after a brief re-direct examination, the state called another witness.

**Baccaire's Testimony**

The state then called Raymond Baccaire to the stand. The prosecutor began his examination with a lengthy recitation of Baccaire's extensive criminal record and elicited from the witness that he had been incarcerated at the ACI in May 2011. Baccaire testified that, while he was housed at the ACI, he was familiar with defendant from recreation time among the general population. Baccaire also testified that he and defendant had become acquaintances, through meals and playing cards. According to Baccaire, he told defendant about his family and "what I got charged with, what I did wrong, and stuff like that." In their conversations, Baccaire said defendant revealed the shooting incident in Pawtucket, saying that it started with "a fight that took place at a Shell gas station * * * they started arguing, and they came out, they had words, and they got in the car and left."

Later, Baccaire and defendant became cellmates, spending almost eighteen hours a day together confined to their cell. Baccaire testified that, after they became cellmates, defendant began to reveal more details about the Barros shooting. Baccaire recounted that defendant said that he had gotten into an argument inside the Shell station and that the confrontation escalated outside, at which point defendant got into a BMW 745 and proceeded to follow Barros' car as it proceeded out of the station's lot. Baccaire testified that defendant said a highway chase began, but that defendant quickly exited the highway to get his hands on a weapon, "somewhere off the [highway]. I don't know if it was the Chad Brown area," because while he was at the Shell station, "[defendant said he] had nothing on him at the time." Baccaire testified that defendant told him that they got back on the highway, exited in Pawtucket and "they spotted [Barros's] car,

- 7 -

and they couldn't believe they found them." Baccaire said that defendant told him that at this point "[t]hey pulled up to the side and shot through—shot through the windows of the vehicle." Baccaire went on to recount the cooperation agreement that he had entered into with the Attorney General's Office, conceding when pressed by defense counsel, that he was "trying to help [himself] get out of the ACI." Nonetheless, Baccaire maintained that his testimony had been truthful. After the testimony of Baccaire, the state rested its case.[10]

### Attempt to Recall Detective LaForest

On January 23, 2013, defendant made an effort to recall Det. LaForest as a witness in his case-in-chief for the purpose of asking the detective questions about the May 17, 2011 meeting, questions which defendant had been precluded from asking on cross-examination. Outside the hearing of the jury, the trial justice said that the state's objection to Det. LaForest's testimony "is probably well-founded," but allowed defense counsel to place an offer of proof on the record.[11] Defense counsel stated she wished to question Det. LaForest "in a very limited scope," about the ACI meeting at which Det. LaForest questioned defendant about details of the Barros murder.[12]

---

[10]  At the close of the state's evidence, the trial justice granted an acquittal on the conspiracy count, count 7, pursuant to defendant's motion under Rule 29(a) of the Superior Court Rules of Criminal Procedure. An acquittal may be ordered by a trial justice when "after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of such an offense or offenses." Id.

[11]  After returning from a brief recess after the close of the state's evidence, the trial justice began:

> "[Trial Justice]: All right. I had an [sic] a brief conference with counsel. [The defendant's attorney] wants to recall Detective LaForest, and I have indicated to her that the State's objection to doing what she wants to do is probably well-founded. You can place it on the record properly, if you want."

[12]  Defense counsel's offer of proof was as follows:

> "I would seek to recall Detective LaForest to the stand to testify in a very limited scope regarding his visit to the ACI on May [17th] of 2011 to interview my client, Victor Arciliares, regarding this homicide. * * * In the course of that interview,

- 8 -

Initially, defendant contended that Det. LaForest went to the ACI to "talk to [defendant] as a witness, not as a suspect." The state objected, citing Rule 403 of the Rhode Island Rules of Evidence, and arguing that whether the detective viewed defendant as either a suspect or a witness was an opinion of which the relevance "seems tenuous and can lead to confusion in the minds of the jurors."[13] The trial justice agreed, sustaining the state's objection. The defendant then offered additional reasoning for the testimony; that Det. LaForest's disclosing of the investigation's information to defendant was a possible way Baccaire got the "shreds of fact" with which to testify that defendant was involved with the murder. Defense counsel argued that defendant may have learned details of the murder from Det. LaForest, and then relayed them to Baccaire, because, "the May 17, 2011 interview by [Det.] LaForest, and my client's comments regarding that interview by Baccaire, are an alternative source [for the facts Baccaire testified to]."[14] The trial justice did not agree, saying simply, "I disagree with you. I won't permit him to testify to that." Detective LaForest was not recalled to the stand.

---

> Detective LaForest showed my client photographs from—taken from the Shell station video * * * . What I am after is the fact that Detective LaForest went to the ACI to interview my client shortly prior to Baccaire coming forward as a witness * * * that Detective LaForest showed my client photographs from the Shell station video, and questioned him about the events at the Shell station that evening. That's what I'm after."

[13] Rule 403 of the Rhode Island Rules of Evidence states in part, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * * ."

[14] Defense counsel's offer of proof continued:

> "It is the defense's position that my client's comments to Baccaire, and you'll recall Baccaire testifying regarding my client talking about the police coming to the ACI to interview him, are an alternative source of the shreds of fact that Baccaire has used to weave the tapestry of his testimony. The State has made quite clear that it intends to argue that there is no alternative source for the threads used to weave that tapestry, and I would submit that the May 17, 2011 interview by [Det.] LaForest, and my client's comments regarding that interview by

## Closing Arguments and Post-Verdict Proceedings

After being thwarted in his attempt to call Det. LaForest as a witness, defendant's case-in-chief was succinct; he briefly recalled Ptlm. Gould for the purpose of having the officer testify that, when he arrived on the scene, passenger Jason DaCruz initially told him that the shooter's vehicle was a "black Cherokee," which contradicted the testimony DaCruz had given during the state's case. Closing arguments began, and in the state's closing the prosecutor asked repeatedly, "[h]ow did [Baccaire] have access to all of this information? * * * How could Mr. Baccaire have possibly known[?]" The prosecutor went on, "[h]ow could [Baccaire] have known, except by hearing it from someone who was there, someone who acknowledged being at the Shell station and was at the Shell station?" The prosecutor concluded by saying it was defendant's words, conveyed through Baccaire, that built the "wall of evidence * * * so high, so thick, he cannot scale it."

On the same day, counts 1 through 5 went to the jury for deliberation. During deliberation, the jury sent a note to the trial justice, informing him that "[w]e are at a point when we cannot arrive at a unanimous verdict," indicating that it was how Baccaire had gotten his information and "if some or all was from another source," that was vexing the panel.[15] The next day, January 25, 2013, the trial justice addressed the question by delivering an <u>Allen</u> charge, a standard jury instruction designed to assist juries that claim to be at a deadlock. <u>Allen v. United</u>

---

Baccaire, are an alternative source. So the [trial justice's] ruling is preventing me from laying the factual foundation for that argument."

[15] The note was written by the foreperson on the afternoon of January 24, 2013, the second day of deliberation; it read:

"We are at a point when we cannot arrive at a unanimous verdict. We are currently at an 11-1 impasse. The issue is the information given to Mr. Baccaire and if he was given all of this by the defendant or if some or all was from another source."

<u>States</u>, 164 U.S. 492, 501 (1896) (upholding a trial justice's encouragement of jurors to listen to the opinions of other jurors to resolve a deadlock).  The defendant objected, arguing that the proper thing to do would be to declare a mistrial.  The trial justice disagreed and imparted the charge, noting that the language he employed had been approved by this Court in <u>State v. Rodriguez</u>, 822 A.2d 894, 899-904 (R.I. 2003).  The same afternoon, the jury returned guilty verdicts on all counts.

On February 1, 2013, a hearing was held on defendant's motion for a new trial, under the provisions of Rule 33 of the Superior Court Rules of Criminal Procedure.[16]  In his motion, defendant argued that the refusal to allow Det. LaForest to testify about what he told defendant at their meeting at the ACI was an error of law worthy of a new trial.  Defense counsel again articulated why she should have been allowed to question Det. LaForest, urging that the trial justice's "decision not to permit [Det. LaForest's] testimony and evidence essentially gutted my client's defense because it prevented him from providing an alternative explanation."[17]  The

---

[16]  Rule 33 of the Superior Court Rules of Criminal Procedure provides in part, "[o]n motion of the defendant the court may grant a new trial to the defendant if required in the interest of justice."  Specifically embraced in the "interest of justice" standard are errors of law made at trial.  The rule "permits the court to order a new trial for error of law committed at trial.  This change brings the Rhode Island rule into harmony with those of the vast majority of state jurisdictions and the federal courts."  <u>Id.</u> (Committee Notes for 2002 Amendment).

[17]  The transcript says as follows:

> "[Defense Counsel]: [T]he fact that the car was stopped at a red light.  The fact that they had been at a Shell station.  The fact that there were people in the BMW.  Those facts were part of the subject matter of the interview that Detective LaForest conducted of Mr. Arciliares in May * * * .
> "[Trial Justice]: But even if that's true—
> "[Defense Counsel]: I think—
> "[Trial Justice]: —that if [Det.] LaForest gave your client, as you claim, all of this information, who gave it to Baccaire other than your client?
> "[Defense Counsel]: My client giving Baccaire information about [Det.] LaForest coming to talk to him about this shooting, and falsely accusing him of being the shooter, my client venting about that * * * I would submit, have provided

- 11 -

motion was denied by the trial justice, who said, "I am satisfied that the error that you claim was not an error." Specifically, the trial justice declared, "I do have a recollection that there was a Harnois type of objection voiced by the State because it seemed to me * * * [it] very much invited testimony to be assumed by the jury of what the Defendant would offer were he to testify." The trial justice further found that a new trial was not warranted based on the weight of the evidence, because "[t]he jury rightly concluded" defendant was guilty of the five charges.

The defendant was subsequently sentenced to two consecutive life sentences on counts 1 and 2, two concurrent sentences of twenty years on counts 3 and 4, to be served consecutively to the two life sentences, and an additional twenty years on count 5 to be served consecutively to the entire sentence. The defendant filed a timely appeal to this Court.

## II

### Standard of Review

Our constitution guarantees a criminal defendant the right to cross-examine and obtain admissible evidence from witnesses presented by the prosecution. State v. Brown, 709 A.2d 465, 473 (R.I. 1998) (citing State v. Doctor, 690 A.2d 321, 327 (R.I. 1997)). "Before any discretionary authority arises in the trial justice to curtail the scope of cross-examination, the defendant must be provided, not just some cross-examination, but sufficient cross-examination as a matter of right." State v. Parillo, 480 A.2d 1349, 1359 (R.I. 1984) (citing State v. DeBarros, 441 A.2d 549, 552 (R.I. 1982)). Only after the defendant has been permitted sufficient cross-examination, may the trial justice limit questioning, "as long as he or she does not 'unduly

Baccaire with the fodder to create this story with my client as the shooter * * * . * * * I believe that the jury's question suggests that they were looking for an alternative explanation for the subject matter of Baccaire's testimony * * * other than my client telling him that he committed the murder. * * * Baccaire took that information and twisted it into the testimony that my client was the shooter * * * ."

- 12 -

restrict' a defendant's cross-examination right." Brown, 709 A.2d at 473 (quoting State v. Anthony, 422 A.2d 921, 924 (R.I. 1980)). Questions that "harass, annoy, or humiliate the witness, or questions that are irrelevant or offer no probative value," are properly limited by the trial justice. Anthony, 422 A.2d at 924 (citing State v. Eckhart, 117 R.I. 431, 436, 367 A.2d 1073, 1075-76 (1977)). In our review, this Court will only disturb such a limitation by the trial justice when he has not properly exercised his discretion, "and then only when such abuse constitutes prejudicial error." Brown, 709 A.2d at 473 (quoting Anthony, 422 A.2d at 924).

When considering claimed error in the admission of photographs, "[w]e review a trial justice's decisions * * * under an abuse-of-discretion standard." State v. Brown, 88 A.3d 1101, 1119 (R.I. 2014) (citing State v. Carter, 744 A.2d 839, 847 (R.I. 2000)). "A trial justice has wide discretion to determine the materiality and relevance of crime-scene and murder-victim photographs." Id. (quoting Carter, 744 A.2d at 847). "[D]etermining the relevance of photographs is within the sound discretion of the trial justice." Id. (quoting State v. Belloli, 766 A.2d 928, 930 (R.I. 2001)).

### III

### Analysis

On appeal, defendant advances what he contends were four errors that occurred during his trial. First, defendant argues that the refusal to allow him to question Det. LaForest about the May 17, 2011, meeting he had with defendant, wherein the detective discussed the details of the investigation, was reversible error that merits a new trial. Next, defendant contends that the trial justice erred when he gave an Allen charge to the deadlocked jury instead of declaring a mistrial. Third, defendant finds error in the admission of an autopsy photograph of the victim's heart and lungs, which he contends was inflammatory and therefore unduly prejudicial. Lastly, defendant

contends that the trial justice erred in not granting his motion for a new trial because the jury's verdict was against the weight of the evidence. In reviewing the four arguments made by defendant, we find error only in the first. It is our opinion that the trial justice erred when he restricted defendant from questioning Det. LaForest about what Det. LaForest said during his interview with defendant. Accordingly, we vacate the conviction and remand for a new trial.[18]

## The Proffered Evidence was Relevant

Cross-examination is perhaps the most powerful tool with which a criminal defendant may extract hints of bias, show a lack of credibility, or impeach portions of the existing evidence against him. Cross-examination is not boundless; questions posed to a witness must be calculated to obtain evidence that is relevant, meaning that it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." State v. Brown, 42 A.3d 1239, 1244 (R.I. 2012) (quoting Rule 401 of the Rhode Island Rules of Evidence). The defendant contends that the testimony of Det. LaForest about the ACI meeting is relevant because, as counsel put on the record at sidebar, Det. LaForest "questioned [defendant] about the events" leading up to the Barros murder. The defendant argues that this is relevant because it tends to undermine the basis of the state's theory: that Baccaire knew certain undisclosed details of the Barros murder only because defendant was the shooter and he divulged those details to Baccaire. We agree with defendant that the evidence was relevant, because, if believed by the trier of fact, it tended to make the state's theory less probable, in that it suggests that Det. LaForest's interview with

---

[18] Though we vacate the convictions and remand for a new trial, based on the first alleged error, we are aware that there may be further proceedings in this matter. Therefore, we shall also address below, defendant's contention that the admission of several photographs was prejudicial.

defendant was an alternative way in which defendant could have learned the details of the murder; details that he later passed on to Baccaire.

**Detective LaForest's Testimony Would Not Implicate <u>Harnois</u>**

It is a foundational principle of our jurisprudence, as set forth in Rule 402 of the Rhode Island Rules of Evidence, that all relevant evidence begins as admissible, subject only to well-founded exceptions.[19] It is the state's contention that the evidence defendant sought to introduce through cross-examination was subject to one such exception, the evidentiary bar set forth in <u>Harnois</u>. <u>See</u> <u>Harnois</u>, 638 A.2d at 535-36. Allowing this line of questioning, the state argues, would effectively have allowed defendant to testify through Det. LaForest. <u>Id.</u> This perception of the evidence appeared to play a part in the trial justice's restriction of defendant's cross-examination. At the hearing on defendant's motion for a new trial, the trial justice said, "I do have a recollection that there was a <u>Harnois</u> type of objection voiced by the State," and that he was "satisfied that [sustaining the state's objection] was not an error." However, we do not agree with this characterization.

In <u>Harnois</u>, 638 A.2d at 535, the defendant availed himself of his constitutional right not to testify. However, the defendant sought to admit statements into evidence that he had made to the police, which were contained in police reports. <u>Id.</u> This Court deemed that these statements did not fit either the statement by party-opponent or the so-called "catchall" provisions of our exceptions to the hearsay rule. <u>Id.</u> at 536. We noted that the defendant was the party offering the

---

[19] Rule 402 of the Rhode Island Rules of Evidence provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the constitution of Rhode Island, by act of congress, by the general laws of Rhode Island, by these rules, or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible."

self-serving statements at trial, none of the hallmarks of trustworthiness were present, and the state would be deprived of the opportunity to cross-examine the defendant. Id. at 535-36 (discussing why the evidence conformed to neither Rules 801(d)(2)(B) nor 803(24) of the Rhode Island Rules of Evidence).[20] Here, by contrast, defendant wished to ask of Det. LaForest what Det. LaForest said at their meeting at the ACI, not what he himself had said. In State v. Dennis, 893 A.2d 250 (R.I. 2006), we addressed this situation. In that case, we summed up the rule in Harnois, stating, "a non-testifying defendant could not introduce his own statements through the testimony of investigating officers * * * ." Dennis, 893 A.2d at 264 (citing Harnois, 638 A.2d at 535-36). However, as is the case here, the defendant in Dennis sought to ask police detectives about statements the defendant alleged the detectives made to him during questioning. Id. The Dennis scenario, asking a detective to recount his own statements that he made at a meeting with the defendant, is exquisitely similar to that of defendant and Det. LaForest. Therefore, the holding in Harnois is here, as it was in Dennis, "inapposite to the situation." Dennis, 893 A.2d at 264.

### Rule 403 Would Not Bar Detective LaForest's Testimony

The state also argued that its objection was founded on the fear that the testimony would instill "confusion in the minds of the jurors" and that, therefore it should be barred by Rule 403. Rule 403 allows the exclusion of relevant evidence if its probative value is substantially outweighed by, among other things, undue prejudice. To be sure, any evidence that defendant could produce that would undercut the state's underlying theory, that Baccaire could have only gotten the information from defendant if defendant was the murderer, is inherently prejudicial to

---

[20] This Court characterized the situation thusly, "[t]he defendant was seeking to offer testimony through his statements, which might raise reasonable doubt in the minds of a jury, yet would deprive the state of the opportunity of cross-examination. The rules of evidence will not be manipulated in this way." State v. Harnois, 638 A.2d 532, 536 (R.I. 1994).

the state's case.  However, "[a]ll evidence supportive of [defendant's theory of the case] is prejudicial to a prosecutor's case, but such evidence will be excluded only if its prejudicial effect outweighs the degree of its probative value."  State v. Tavarozzi, 446 A.2d 1048, 1051 (R.I. 1982).  Here, the trial justice's ruling stymied defendant from arguing to the jury that the details of the Barros murder were no longer closely kept and confined only to the halls of the Pawtucket Police Department or the Rhode Island Attorney General's Office.

The jury should have been able to consider that evidence as it struggled to weigh the credibility of Baccaire's testimony about how he had obtained knowledge of the details of the crime.  In our judgment, defendant had a right to allow the jury to decide whether those details could have come from defendant "venting," as his counsel contended, about "[Det.] LaForest coming to talk to him about this shooting, and falsely accusing him of being the shooter," or whether Baccaire knew those details because defendant was the shooter who admitted the crime to Baccaire.  Indeed, there was some confusion in the minds of the jurors, evidenced by the jury's note during deliberation.  That note to the trial justice asked whether there was "another source" for Baccaire's information.  Additional evidence, clarifying the interplay between Det. LaForest, defendant, and Baccaire, was certainly fodder for the jury's deliberation.  In our opinion, there would be nothing unduly prejudicial to the state's case resulting in Det. LaForest testifying about his own statements at the May 17, 2011 meeting, and it was therefore "not within the bounds of discretion to exclude that relevant testimony."  Tavarozzi, 446 A.2d at 1051.  Denying this cross-examination was an error that prejudiced defendant to such an extent that defendant's Rule 33 motion for a new trial should have been granted after the jury's verdict.

This Court is satisfied that defendant's proffered evidence was relevant, would not have confused the issues or misled the jury, and did not implicate our prohibition in Harnois.

Accordingly, not permitting defendant to ask relevant questions of Det. LaForest was beyond the limits of the trial justice's discretion. Preventing defendant from eliciting the foundation for a defense that he knew the details of the murder because Det. LaForest had revealed them to him, rather than because he was the murderer, was prejudicial error because it undercut Arciliares's strongest defense. See State v. Manocchio, 523 A.2d 872, 875 (R.I. 1987).[21] As it stood, the testimony of Baccaire was quite a thin reed from which the state hung its case, and allowing the source of that testimony to go largely unchallenged was, in our opinion, error.

### The Contested Photograph Was Properly Admitted

We are aware that our mandate will engender further proceedings in this case, including the possibility of a new trial. Therefore, we believe it to be prudent to address the defendant's third argument; that admitting trial exhibit No. 19, a photo of the murder victim's dissected heart and lungs, was an error. We are limited in the review of such evidentiary decisions to determining whether, by admitting the contested photographs, the trial justice went beyond the bounds of his or her discretion. Brown, 88 A.3d at 1119. The photographs in Brown included one of the "victim's neck, shoulders, and head with his skin peeled back over his skull and hair protruding from the folded over skin from his scalp," which this Court called "disturbing to the point of being grisly." Id. at 1120. Nevertheless, we found the admission of all three contested images was within the trial justice's discretion.[22] Id. The photographs were helpful to the jury

---

[21] Similarly, State v. Manocchio, 523 A.2d 872, 873 (R.I. 1987), involved one key prosecution witness, whom the defendant was restricted from cross-examining. This Court found the restriction "extremely harmful to the development of Manocchio's defense by restricting his ability to attack the credibility of the most important witness presented in support of the charges against him." Id. at 875.

[22] Here, as in Brown, defendant is not disputing the cause of death and does not object to all of the autopsy photographs. State v. Brown, 88 A.3d 1101, 1120 (R.I. 2014). In Brown, the defendant contested three photographs he alleged inappropriately influenced the jury, Arciliares limited his objection to only one photograph. Id.

as "visual aids to explain Doctor Cherkov's testimony about the effect of the blunt-force trauma." Id. at 1121. In this case, the photograph admitted over objection against Arciliares is similarly graphic. However, it assists in illustrating the medical examiner's testimony, and tends to prove the state's theory of a single shooter. Because the photograph is relevant and would help the jury to understand the witness's testimony, we conclude that the trial justice did not err when he allowed it to be admitted.

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment of conviction and remand this case to the Superior Court for a new trial.

**Justice Goldberg, concurring.** I concur in the majority's decision in this case. I write separately, however, in order to reiterate this Court's concern as expressed in previous opinions about the potential for reversible error when the state seeks to exclude defense witnesses or limit evidence sought to be introduced by criminal defendants. Whether in the context of motions in limine or unrecorded conferences in chambers, when defendants are precluded from calling witnesses in order to introduce probative and relevant defense evidence, the likelihood of reversible error is manifest. It is, after all, the defendant's trial.

This Court has stated that we "cast a jaundiced eye to the overuse of motions in limine." State v. Scanlon, 982 A.2d 1268, 1275 n.11 (R.I. 2009). All too often the constitutional safeguards guaranteed to criminal defendants under the state and federal constitutions are impacted, and this Court is left with no choice but to vacate the resulting convictions. See, e.g., State v. Clark, 974 A.2d 558, 563 (R.I. 2009); State v. Andujar, 899 A.2d 1209, 1213, 1221-22

- 19 -

(R.I. 2006); State v. Oliveira, 730 A.2d 20, 23-24 (R.I. 1999); State v. Haslam, 663 A.2d 902, 909-11 (R.I. 1995). As a result, this Court has cautioned prosecutors seeking to exclude defense evidence and trial justices who are confronted with a request by the state to limit or exclude defense witnesses, to proceed with caution and to create an adequate record. See Clark, 974 A.2d at 564 ("Likewise, when faced with a request by the state in a criminal case to limit or exclude evidence, it is incumbent upon the trial justice to conduct a voir dire hearing or otherwise carefully review the challenged evidence and cautiously exercise his or her discretion, ever mindful of the potential for prejudicial error.").

The majority correctly notes that this Court will disturb a decision of the trial justice to limit the scope of examination only when the trial justice has abused his discretion and prejudicial error results. See State v. Brown, 709 A.2d 465, 473 (R.I. 1998). However, as this Court previously has stated, "[c]lear abuse occurs when a defendant is prejudiced because his or her attorney is not allowed to engage in what is otherwise an appropriate line of cross-examination." State v. Wright, 817 A.2d 600, 610 (R.I. 2003) (citing State v. Tempest, 651 A.2d 1198, 1212 (R.I. 1995)). This is equally applicable when a defendant is precluded from calling a witness to present probative defense evidence. "A request by the state to limit or exclude the presentation of defense witnesses in a criminal trial should be received with caution and carefully reviewed by the trial justice, who, although exercising his or her broad discretion to determine its relevance, is faced with the potential for prejudicial error to the defendant." State v. Milliken, 756 A.2d 753, 756 (R.I. 2000).


**TITLE OF CASE:**     State v. Victor Arciliares.

**CASE NO:**     No. 2013-124-C.A.
(P1/12-1521AG)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     January 26, 2015

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

For State:  Lauren S. Zurier
Department of Attorney General

For Defendant:  Lara E. Montecalvo
Office of the Public Defender